772 So.2d 90 (2000)
STATE of Louisiana
v.
Artemio LOPEZ.
No. 00-KK-0562.
Supreme Court of Louisiana.
October 30, 2000.
*91 Richard P. Ieyoub, Attorney General, Robert "Rick" Bryant, District Attorney, Frederick Wayne Frey, Counsel for Applicant.
Ronald F. Ware, Lake Charles, Counsel for Respondent.
PER CURIAM:
At issue in the present case is the seizure of approximately 120 pounds of marijuana from respondent's vehicle after rapid escalation of a routine I-10 traffic stop into a major drug investigation brought about by respondent's extreme nervousness and the conflicting descriptions of their itinerary he and his wife gave to a state trooper.
After conducting a hearing on respondent's motion to suppress the evidence, the trial court granted relief on grounds that exigent circumstances did not exist to excuse the warrant requirement because the police had ample time to submit their probable cause showing to a magistrate. In a brief order denying the state's application for review of that ruling, the court of appeal substituted a second basis for suppressing the evidence. Relying explicitly on the provisions of La.C.Cr.P. art. 215.1(D), the Third Circuit took the position that because respondent had been stopped solely for speeding, "[r]easonable *92 suspicion did not exist to justify the trooper's questioning of Defendant and his wife about their travel plans and occupation." State v. Lopez, 99-0177 (La.App. 3rd Cir. 2/4/00), ___ So.2d ___. The court of appeal found that to the extent that the trooper's questioning apparently exceeded the original justification for the stop, the continued detention of the vehicle, and the subsequent search of its interior, were illegal.
We granted the state's application to reverse these rulings because neither rationale employed by the courts below justifies suppression of the evidence.
The circumstances surrounding seizure of the marijuana from respondent's Chevrolet Suburban are undisputed. On the afternoon of January 28, 1998, Trooper Travis Savoy, conducting a routine patrol, pulled over respondent's van for speeding in excess of the posted 70 miles per hour limit. The stop occurred on I-10 east in the vicinity of Sulphur, Louisiana. Summoned to the rear of his van, respondent handed Savoy his license as the trooper explained the reason for the stop and then asked respondent "where he was traveling from, where he was traveling to." Respondent replied that he was traveling from McAllen, Texas, to Butler, Georgia, to visit his sister and, because he was unemployed, "to look for work in the picking industry, picking fruit." According to Savoy's testimony at the hearing on the motion to suppress, during this brief interview, respondent "was extremely nervous, failed to make eye contact, hands shaking, just extremely nervous." Id. at 6. The trooper then walked around to the passenger side to check on the vehicle's registration. Respondent's wife sat in the passenger seat and when Savoy asked her to view the paperwork for the vehicle, he also asked where they were headed. She replied that they were traveling to Fort Valley, Georgia, to visit respondent's sister for two weeks. When Savoy inquired about plans to pick fruit, respondent's wife stated, "no, it wasn't the picking season at that time, after the two weeks they would be returning home to Texas."
Savoy walked back to his patrol unit and began writing out a citation for speeding. With his suspicions aroused by the "conflicting stories from both Mr. Lopez as well as his wife as to the purpose of their trip," he also contacted the Blue Lightning Operation Center run by United States Customs in Gulfport, Mississippi, and asked for a check of the driver's license and registration information provided by respondent and for a check into the criminal histories, if any, of both respondent and his wife. Midway into filling out the traffic citation, Savoy prepared a consent form for a search of respondent's van. After Savoy explained the form to him, respondent refused consent. By this time, trooper Dan Dougharty had fortuitously arrived on the scene with a drug detection dog. Savoy explained that respondent had refused consent to search and asked Dougharty to run the dog around the van. The dog alerted on the rear of the van and a subsequent search of the interior led to the seizure of 120 pounds of marijuana wrapped in several clear plastic bags.
Without regard to the trooper's subjective intent, respondent's speeding above the posted limit gave the officer an objective probable cause basis to pull over the vehicle for a traffic violation. Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996)("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). La.C.Cr.P. art. 215.1(D) states that in conducting a traffic stop "an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity." The statute also provides, however, that "nothing herein shall prohibit a peace officer from compelling or instructing the motorist to comply with the administrative or other legal requirements of Title 32 or Title 47 *93 of the Louisiana Revised Statutes of 1950." La.C.Cr.P. art. 215.1(D) therefore did not preclude the trooper from conducting a routine driver's license and vehicle registration check with respondent, a non-resident motorist, or from engaging in conversation with him and his passenger, while he did so. See La. R.S. 32:404(A); La.R.S. 47:511(A).
Respondent's agitated demeanor and conflicting accounts of their itinerary given by the vehicle's occupants then gave the trooper reasonable suspicion to enlarge the scope of his investigation. State v. Burton, 93-0828 (La.App. 3rd Cir. 2/23/94), 640 So.2d 342. The arrival of a drug-detection dog on the scene within minutes of the stop afforded the officer the opportunity to "pursue[] a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). The dog's sniffing around the exterior of the vehicle did not itself constitute a search, United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45, 77 L.Ed.2d 110 (1983), and its subsequent alert, consistent with respondent's extreme nervousness, gave the officers probable cause to search for contraband. United States v. Seals, 987 F.2d 1102, 1106-07 (5th Cir.1993).
While the vehicle was stationary at the time the search proceeded, and the trooper may have had time to find a magistrate for purposes of issuing a search warrant, the trial court erred in ruling that the absence of a warrant rendered the search of respondent's vehicle illegal. No constitutional distinction exists "`between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant.'" State v. Guzman, 362 So.2d 744, 749 (La.1978) (quoting Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970)). Because either course is reasonable under the Fourth Amendment, id., "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more." Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (citation omitted). In the present case, exigent circumstances arising from the stop of respondent's vehicle on the open road excused the warrant requirement for a search otherwise based on probable cause. State v. Edsall, 385 So.2d 207, 211 (La. 1980).
Accordingly, the judgment of the district court is reversed and this case is remanded for further proceedings consistent with the views expressed herein.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., Dissenting.
I would reinstate the trial court's decision to suppress the evidence seized from Mr. Lopez's vehicle because Mr. Lopez's Fourth Amendment rights were violated. All of the evidence supports the trial judge's conclusion that this traffic stop was pretextual.
After pulling over Mr. Lopez's van for a purported speeding violation, trooper Savoy proceeded to question defendant and his wife about their travel plans and occupation, then contacted the United States Customs Office (BLOC)[1] to run a check of Mr. Lopez's driver's license, registration, and the criminal histories of both Mr. Lopez and his wife. He then prepared a voluntary consent form for a search of the vehicle.
*94 The state asserts that trooper Dan Dougharty was "coincidently" in the area with a drug detection dog in his vehicle, and he pulled over to the scene to assist trooper Savoy. After the dog made a "hit" on Mr. Lopez's van, trooper Savoy proceeded to conduct a warrantless search of the van, which resulted in the seizure of marijuana and the arrest of Mr. Lopez.
Trooper Savoy explained the reasons for his actions were because the defendant "was extremely nervous, failed to make eye contact, hands shaking, just extremely nervous." It is not an uncommon experience for an individual to exhibit nervousness when stopped by a state trooper for speeding.
The trial court noted that Mr. Lopez, in name and in person, appears to be of Latin descent. Trooper Savoy denied that "racial profiling" of Hispanics played any role in the stop. Despite trooper Savoy's assertions, I find it difficult to believe that every routine traffic stop escalates into a full investigation, which includes a call to U.S. Customs, an inquiry into the criminal history of the driver, a request to search the vehicle, and the "fortuitous" arrival on the scene of a drug detection canine. Certainly, this is not standard procedure in all traffic stops for speeding violations.
I agree with the third circuit's finding that because Mr. Lopez had been stopped solely for speeding, "reasonable suspicion did not exist to justify the trooper's questioning of Mr. Lopez and his wife about their travel plans and occupation." Savoy had no reason to detain Mr. Lopez, his wife, and their vehicle any longer than it was necessary to issue Mr. Lopez a speeding citation. An evaluation of whether reasonable grounds exists for an investigative detention requires looking objectively at the totality of the circumstances known to the officer at the time of the challenged action. State v. Bargeman, 98-617 (La. App. 3 Cir. 10/28/98), 721 So.2d 964, writ denied, 99-0033 (La.5/28/99), 743 So.2d 658.
An objective review of the totality of the circumstances shows that prior to the dog's arrival, trooper Savoy did not have a reasonable suspicion that Mr. Lopez was involved in any criminal activity, other than speeding. To the extent that trooper Savoy's questioning exceeded the original justification for the stop, the continued detention of the vehicle, and the subsequent search of its interior were illegal.
NOTES
[1] Trooper Savoy contacted the Blue Lightening Operation Center (BLOC) run by United States Customs in Gulfport, Mississippi.