# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**03-0269**

STATE OF LOUISIANA

VERSUS

CHARLES E. MORRIS, GLENIVAN COTTLE,
and DONELL BADGETT, JR.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 00-206111
HONORABLE DON J. HERNANDEZ, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, John D. Saunders, and Billy Howard
Ezell, Judges.

**Thibodeaux, J., dissents and assigns written reasons.**


**REVERSED AND REMANDED.**


**Hon. J. Phillip Haney**
**District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**Counsel for: Plaintiff/Applicant**
**State of Louisiana**

**Harold Dewey Register  Jr.**
**Attorney at Law**
**P. O. Box 80214**
**Lafayette, LA 70598-0214**
**(337) 981-6644**
**Counsel for: Defendant/Respondent**
**Glenivan Cottle**

**Thomas M. Calogero**
**Regan Manasseh & Boshea**
**2125 St. Charles Avenue**
**New Orleans, LA 70130**
**(504) 522-7260**
**Counsel for: Defendant/Respondent**
**Donell Badgett, Jr.**

**Anthony Jude Saleme, Jr.**
**Asst. District Attorney**
**St. Martin Parish Courthouse**
**St. Martinville, LA 70582**
**(337) 394-2220**
**Counsel for: Plaintiff/Applicant**
**State of Louisiana**

**Lynden James Burton**
**Pecantte-Burton & Burton**
**1407 Main Street**
**Jeanerette, LA 70544**
**(337) 276-7888**
**Counsel for: Defendant/Respondent**
**Charles E Morris**

**SAUNDERS, Judge.**

The Defendants, Charles E. Morris, Glenivan G. Cottle, and Donell L. Badgett, Jr., are charged with possession of cocaine in violation of La.R.S. 40:967(F)(1)(c). Morris was also charged with following too closely in violation of La.R.S. 32:81(A). Badgett was also charged with improper lane usage, in violation of La.R.S. 32:79. It appears from the record before this court that the two traffic charges are charged in the same lower court docket number as the drug charges. The Defendants filed motions to suppress that were granted by the trial court after a hearing on May 9, 2002. It is from this ruling the State timely filed this pretrial writ application. No information on trial date was provided.

On April 7, 2003, this court granted this writ application to the May 8, 2003 docket for consideration on the merits.

## FACTS:

At the hearing on the motions, Louisiana State Police Trooper Lanny Bergeron testified that he stopped Defendant Morris's vehicle on October 9, 2000, at approximately 12:47 am. Trooper Bergeron stated that he was parked on the shoulder of Interstate 10, near mile post 110 in St. Martin Parish, when he saw a blue Crown Victoria following less than a car length behind a green Ford Taurus. He testified that he intended to stop the blue Crown Victoria for the traffic offense, but did not after observing fellow State Trooper John Trahan traveling directly behind the Crown Victoria and requesting a registration check on the vehicle. Trooper Bergeron soon discovered that, while Trooper Trahan had called for a registration check on the Crown Victoria, he had actually stopped the red Suburban that Trooper Bergeron had noticed earlier traveling some distance behind the Crown Victoria.

Trooper Trahan testified that, on October 9, 2000, at 12:47 am, he observed a

Crown Victoria following too closely behind a Ford Taurus. While approaching the Crown Victoria with intent to stop the vehicle for the observed traffic offense, Trooper Trahan observed a red Suburban committing the traffic offense of improper lane usage. While calling for the registration check on the Crown Victoria the Suburban continued to commit improper lane usage traffic offenses. Trooper Trahan indicated that the traffic offenses committed by the Suburban appeared to be deliberate. In light of the continuing, and apparently deliberate, traffic offenses committed by the Suburban, Trooper Trahan testified that he chose to stop the Suburban because it appeared to pose more of a danger to other motorists than the Crown Victoria.

After seeing Trooper Trahan behind the Crown Victoria, Trooper Bergeron turned around and headed in the opposite direction. Shortly thereafter he heard over the radio that his partner had run a registration check on the Crown Victoria and then stopped a Suburban with a Pennsylvania license tag. He testified that he knew at that time that Trooper Trahan had not stopped the Crown Victoria. Trooper Bergeron stated that he also heard on his radio that the Crown Victoria registration check revealed the owner of that vehicle was Glenivan Cottle. Then, Trooper Trahan stated on the radio that Cottle was in the Suburban that he had stopped.

Trooper Bergeron stated that he is familiar with the narcotics traffickers' practice of having a "tail" vehicle traveling along with the vehicle carrying the narcotics, referred to as the "load" vehicle, for the purpose of drawing attention of law enforcement away from the "load" vehicle. This is done by having the "tail" vehicle commit an infraction with the intention of having the law enforcement agent stop the "tail" vehicle so that the narcotics in the "load" vehicle may proceed towards its destination undisturbed. He also noted that, typically, when vehicles are traveling together, the other vehicle will also pull over if one is stopped by police.

2

When Trooper Bergeron came to realize that Trooper Trahan had not stopped the Crown Victoria, and received word that the owner of the Crown Victoria was a passenger in the Suburban stopped by Trooper Trahan and that had appeared to be traveling with the Crown Victoria, he took action to locate the Crown Victoria. He eventually located and stopped the blue Crown Victoria at mile post 138 in Iberville Parish. The driver of the Crown Victoria was identified as Defendant Morris. Trooper Bergeron asked him the whereabouts of the owner of the vehicle. Defendant Morris told him that he was a rapper and he was traveling from Houston to New Orleans to visit a friend and drop off the car. He said the owner of the car was in New Orleans. Trooper Bergeron stated that he ran a criminal history check and discovered that Defendant Morris had an arrest history, and that the owner of the vehicle, Defendant Cottle, had an open case with DEA. Trooper Bergeron asked for written consent to search the vehicle, and Defendant Morris signed the form.

While searching, the officer noticed the fuel tank had recently been removed and also thought he found a false compartment in the bottom of the trunk. Defendant Morris was handcuffed and *Mirandized*. Trooper Bergeron testified that the Defendant was not free to leave at this point even though no illegal drugs had been located. After the canine drug dog alerted, officers searched the compartment and found packages of cocaine.

The driver of the Suburban was Defendant Badgett. Trooper Trahan testified that the Defendant appeared extremely nervous and told him that he was weaving on the road because he was tired. The driver told the trooper that he only knew his passenger's first name and had only known him for a week. The passenger gave his name and the trooper recognized it as the owner of the Crown Victoria. Trooper Trahan contacted Troopers Bergeron and Bija, and Iberville Parish Sheriff's Office

3

to be on the lookout for the Crown Victoria. After questioning the driver and passenger of the Suburban, Trooper Trahan ran a criminal history check on both men and found they had prior drug arrests. He then prepared a written consent to search form which the driver, Defendant Badgett, signed. A search of the vehicle revealed nothing illegal.

Trooper Bergeron advised Trooper Trahan that he stopped the Crown Victoria and that its driver, Defendant Morris, was the owner of the Suburban. Bergeron further advised Trahan that he could arrest Badgett and Cottle because a compartment containing contraband was located in the Crown Victoria. Trooper Trahan testified he arrested Badgett and Cottle because "they were traveling together; the vehicles was not registered to them. The owner of the Crown Vic was the passenger in the vehicle, and at 0440 something in the morning, it is not likely that two cars will be traveling together and the people do not know each other." We note that Trooper Trahan incorrectly referred to the time of the stop of the Suburban as 4:40 am, when he earlier testified the stop was at 12:47, and this time was corroborated by Trooper Bergeron's testimony.

**ASSIGNMENT OF ERROR:**

The State contends the trial court erred in granting Defendants' motions to suppress. It argues that the trooper's stop of the Crown Victoria, driven by Defendant Morris, was based on a traffic violation and reasonable suspicion of criminal activity.

*TRAFFIC VIOLATION*

We first address whether the traffic violation was sufficient, in and of itself, to justify the stop of the Crown Victoria.

The State argues that both Trooper Trahan and Trooper Bergeron witnessed the driver of the Crown Victoria committing a traffic violation, following too closely,

4

therefore the subsequent stop of the vehicle was legal. The State cites *State v. Waters*, 00-0356 (La. 3/12/01), 780 So.2d 1053. In *Waters*, the Louisiana Supreme Court found that the officer who stopped the Defendant's vehicle had a reasonable basis for the stop even though the vehicle only touched the right-hand fog line of the roadway, but did not cross the line. The officer had probable cause to believe that a traffic violation had occurred. While discussing the reasonableness of the stop, the court stated:

> As a general matter, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) (citations omitted). The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. *Whren*, 517 U.S. at 813, 116 S.Ct. at 1774 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants. See, e.g., *State v. Richards*, 97-1182, p. 2 (La.App. 5th Cir.4/15/98), 713 So.2d 514, 516 (failure to come to a complete stop at a stop sign); *State v. Dixon*, 30,495, p. 1 (La.App.2d Cir.2/25/98), 708 So.2d 506, 507 (traveling less than a car length behind lead vehicle); *State v. Duran*, 96-0602, p. 1 (La.App. 5th Cir.3/25/97), 693 So.2d 2, 3 (failure to signal before changing lanes).

*Id.* at 1056.

In *Whren v. U.S.*, 517 U.S. 806, 808, 116 S.Ct. 1769, 1771-72 (1996), the United States Court stated the issue before it as follows:

> In this case we decide whether the temporary detention of a motorist who the police have probable cause to believe has committed a civil traffic violation is inconsistent with the Fourth Amendment's prohibition against unreasonable seizures unless a reasonable officer would have been motivated to stop the car by a desire to enforce the traffic laws.

Whren conceded that he committed traffic violations. However, he contended that the traffic stop was a pretext for a drug investigation. Whren argued that, because there

5

are so many traffic laws, officers can stop anyone based on a technical violation, and may choose to make profile stops. The Court stated the defendant's position as follows: "To avoid this danger, they say, the Fourth Amendment test for traffic stops should be, not the normal one (applied by the Court of Appeals) of whether probable cause existed to justify the stop; but rather, whether a police officer, acting reasonably, would have made the stop for the reason given." *Id.* at 810; 1773. The Court rejected this argument, citing its prior cases that "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Id.* at 813; 1774.

The Louisiana Supreme Court cited the *Whren* case in *State v. Lopez*, 00-0562 (La. 10/30/00), 772 So.2d 90. In *Lopez*, the court stated, "[w]ithout regard to the trooper's subjective intent, respondent's speeding above the posted limit gave the officer an objective probable cause basis to pull over the vehicle for a traffic violation." *Id.* at 92. The court quoted from *Whren* stating, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.*

Similarly, in *State v. Kalie*, 96-2650, p. 3 (La. 9/19/97), 699 So.2d 879, 881, the Louisiana Supreme Court stated:

> That Officer Brashier was conducting a drug interdiction patrol when he pulled over the Camry had no bearing on the legality of the initial stop for improper lane use. *Whren,* 517 U.S. at [806], 116 S.Ct. at 1774 ("the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.") (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978)).

In the present matter the trial judge outlined the facts of the case in his written reasons for granting the Defendants' motions to suppress. He found that the traffic stop of the Suburban and the detention of Defendants Badgett and Cottle was legal,

6

while the stop of the Crown Victoria was illegal.  The trial judge stated:

> This Court finds that subsequent actions of Trooper Bergeron and Trooper Trahan resulted in conduct that was unreasonable and not subject to the probable cause.  Trooper Bergeron testified that he observed the Crown Victoria commit a traffic violation in his presence, in St. Martin Parish.  He testified that he did not stop the vehicle because he assumed that Trooper Trahan had observed the same, and would stop the vehicle.  Testimony revealed that Trooper Trahan did not stop the Crown Victoria because he felt that the offense committed by the Suburban was more of a threat to public safety.  Based upon the facts presented to the Court, the Crown Victoria was only stopped and located in Iberville Parish based upon the speculative conduct of Trooper Bergeron.  Trooper Bergeron stated that, "he had heard Trahan come back over the radio stating that he had Mr. Cottle inside the Suburban that he had stopped."  Bergeron testified that this last bit of information, that the Crown Victoria's owner was in the Suburban, "right there, immediately with past experiences, raised some suspicions," and, "just kind of the excitement in Trooper Trahan's voice, knowing him, I just assumed that he had something going on."

> Given the totality of the circumstances, it is apparent that it was not any traffic violation, which caused the Crown Victoria to be stopped in Iberville Parish.  Information obtained via police radio between the troopers prompted Trooper Bergeron to again pursue the Crown Victoria.  Trooper Bergeron's conduct initiated that he pursued defendant Morris, apparently for the sole purpose of discovering possible criminal activity.  Such actions were pretextual.  Based upon the information provided to the Court, Trooper Trahan and Trooper Bergeron had no intentions of pursuing the Crown Victoria for the traffic violation committed in St. Martin Parish.  Trooper Bergeron's actions were prompted by information received from Trooper Trahan, which resulted from the stop of the Suburban.  Therefore, the Court concludes that the motivation or primary purpose underlying the stop of the Crown Victoria was Trooper Bergeron's knowledge that the driver of the Crown Victoria and the occupants of the Suburban were in some way connected to one another, not because of any criminal conduct on the part of the occupants of either vehicle.  Therefore, this Court finds that the stop of the Crown Victoria was pretextual and without reasonable or probable cause.

> Due to a totality of the circumstances, the Court finds that the stop of the Crown Victoria was unreasonable, without cause, and therefore, violative of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1 sections 2 and 5 of the Constitution of Louisiana.

The trial court found that Trooper Bergeron pursued the Crown Victoria

"apparently for the sole purpose of discovering possible criminal activity" and not for

any traffic violation. However, the court also stated, "[b]ased upon the information provided to the Court, Trooper Trahan and Trooper Bergeron had no intentions of pursuing the Crown Victoria for the traffic violation committed in St. Martin Parish." With this statement, it would appear that the trial court acknowledged that there was, in fact, a traffic offense committed in St. Martin Parish. Despite this acknowledgment, however, in the last sentence of its ruling the court stated that based on the totality of the circumstances, the stop of the Crown Victoria was without cause.

We disagree with this statement by the trial court for several reasons. Both Trooper Bergeron and Trooper Trahan testified that they witnessed the Crown Victoria committing the traffic offense of following too closely to the preceding vehicle. In addition, both Trooper Bergeron and Trooper Trahan indicated their intention of stopping the Crown Victoria for that traffic offense. There is also objective evidence of this intent to stop the Crown Victoria for this traffic offense in the form of Trooper Trahan's call for registration information on the vehicle. Both officers also indicated very plausible justifications for their initial failure to stop the vehicle. Trooper Bergeron heard the request for registration information and believed Trooper Trahan was making the stop. Trooper Trahan made the decision to stop the Suburban, instead of the Crown Victoria, after evaluating the danger each vehicle presented to the public, believing the Suburban presented the most immediate danger.

Additionally, despite this evidence of the Trooper's apparent intent to stop the Crown Victoria, once a traffic violation has been committed the subjective intent of the officers is irrelevant. "The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer." *Waters*, 780 So.2d at 1056. The supreme court's ruling states that even if a stop is pretextual,

8

the actual motives of the police are irrelevant if the police do "no more than they would be authorized to do." The trial court found the stop of the Crown Victoria was without reasonable and probable cause. For the above reason we find that the trial court erred in failing to apply the objective test the Louisiana Supreme Court endorsed in *Waters*, discussed above, and in granting the motion to suppress. Based on the evidence presented, we find that Trooper Bergeron had sufficient cause to stop the Crown Victoria based on its commission of the above referenced traffic violation. Therefore, the trial court abused its discretion by granting the motion to suppress and its judgment should be reversed.

While we hold that there was a valid traffic offence, which would provide sufficient cause to stop the vehicle, we acknowledge the difficulty created by the prolonged delay between the commission of the offense, and the stopping of the vehicle. For the sake of completeness, we also analyze the subjective intent of the traffic stop under the criteria created by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

*TERRY STOP*

The State further argues the stop of the Crown Victoria was authorized pursuant to La.Code Crim.P. art. 215.1. That code article states in pertinent part:

> A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
>
> . . . .
>
> D. During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. However, nothing herein shall prohibit a peace officer from compelling or

9

instructing the motorist to comply with administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes of 1950.

The reasonable suspicion referenced in La.Code Crim.P. art. 215.1(A) is something less than probable cause and something more than a hunch. *State v. Flowers*, 441 So.2d 707 (La.1983), *cert. denied*, 466 U.S. 945, 104 S.Ct. 1931 (1984). To determine the existence of reasonable suspicion, the totality of the circumstances faced by the law enforcement officers must be considered and the officers must be able to articulate facts that in conjunction with their inferences *and* the officers' experience give rise to reasonable suspicion. *Id.*

The Louisiana Supreme Court has recognized the validity of what we might call an educated hunch, which officers with significant experience and training are able to utilize while working in the field. In *State v. Johnson*, 01-2081, pp. 2-3 (La. 4/26/02), 815 So.2d 809, 811 the court stated:

> In determining whether the police possessed the requisite "'minimal level of objective justification'" for an investigatory stop based on reasonable suspicion of criminal activity, *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)(quoting *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)), reviewing courts "must look at the 'totality of the circumstances' of each case," a process which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, ----, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002)(quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The assessment by a reviewing court of the cumulative information known to the officers avoids a "divide-and-conquer analysis" by which the whole becomes less than the sum of its parts because each circumstance examined individually may appear "readily susceptible to an innocent explanation." *Arvizu*, 534 U.S. at ----, 122 S.Ct. at 751.

In *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744 (2002), the United States Supreme Court stressed that the reasonable suspicion test of an investigatory

stop must be based on the totality of all of the circumstances considered together. This approach includes the officer's inferences and deductions made based upon his experience and specialized training. In *Arvizu*, the Court stated:

> Having considered the totality of the circumstances and given due weight to the factual inferences drawn by the law enforcement officer and District Court Judge, we hold that Stoddard had reasonable suspicion to believe that respondent was engaged in illegal activity. It was reasonable for Stoddard to infer from his observations, his registration check, and his experience as a border patrol agent that respondent had set out from Douglas along a little-traveled route used by smugglers to avoid the 191 checkpoint. Stoddard's knowledge further supported a commonsense inference that respondent intended to pass through the area at a time when officers would be leaving their backroads patrols to change shifts. The likelihood that respondent and his family were on a picnic outing was diminished by the fact that the minivan had turned away from the known recreational areas accessible to the east on Rucker Canyon Road. Corroborating this inference was the fact that recreational areas farther to the north would have been easier to reach by taking 191, as opposed to the 40-to-50-mile trip on unpaved and primitive roads. The children's elevated knees suggested the existence of concealed cargo in the passenger compartment. Finally, for the reasons we have given, Stoddard's assessment of respondent's reactions upon seeing him and the children's mechanical-like waving, which continued for a full four to five minutes, were entitled to some weight.
>
> Respondent argues that we must rule in his favor because the facts suggested a family in a minivan on a holiday outing. A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct. See *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)(that flight from police is not necessarily indicative of ongoing criminal activity does not establish Fourth Amendment violation). Undoubtedly, each of these factors alone is susceptible of innocent explanation, and some factors are more probative than others. Taken together, we believe they sufficed to form a particularized and objective basis for Stoddard's stopping the vehicle, making the stop reasonable within the meaning of the Fourth Amendment.

*Id.* at 752-53.

In *State v. Wilson*, 00-0178, p. 3 (La. 12/8/00), 775 So.2d 1051, 1053, the supreme court held that, "[b]ecause reasonable suspicion for an investigatory stop need not rise to the level of probable cause for an arrest, the police require only 'some

11

minimal level of objective justification . . .' to intrude on an individual's right to remain free from governmental interference. *Huntley*, 708 So.2d at 1049 (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989))." In *Wilson*, the court found the investigatory stop by the police was valid and reversed the trial court's grant of defendant's motion to suppress. In so ruling the court stated:

> In the present case, the lateness of the hour, the location of the car near a project known to the officer from extensive personal experience as a high narcotics trafficking area frequented by individuals living outside of the neighborhood, and the attempt of both men to avoid the police presence immediately upon sight of the officer gave Glasser an articulable and minimal objective basis for suspecting that he had interrupted a drug transaction and for stopping both individuals. Glasser had observed the defendant place both hands in his jacket as he attempted to walk away and the officer was fully acquainted with the "close association between narcotics traffickers and weapons."

*Wilson*, 775 So.2d at 1053 (citations omitted).

In the present matter, Trooper Bergeron stated that he noticed three vehicles traveling eastbound on I-10 in close proximity, very late at night at approximately 1:00 am. He also noticed the Crown Victoria, one of those three vehicles, committing a traffic offense. The only reason he failed to stop the vehicle for this offense was because he noticed Trooper Trahan following behind the Crown Victoria and calling in registration information on the vehicle. Despite the fact that Trooper Trahan was calling in for registration information on the Crown Victoria, he actually stopped the Suburban that Trooper Bergeron had noticed following the Crown Victoria. Trooper Bergeron soon learned that the owner of the Crown Victoria was actually traveling in the Suburban. Although the two vehicles were clearly traveling together, the Crown Victoria did not pull over to wait after Trooper Trahan stopped the Suburban. Trooper Bergeron testified that he is familiar with narcotics traffickers' practice of having a

"tail" and a "load" vehicle. At this point Trooper Bergeron testified that based on past experience, he immediately became suspicious.

Based on the above factors, and given a "totality of the circumstances" analysis of the relevant facts, we find that Trooper Bergeron possessed at least a minimum level of objective justification for an investigatory stop based on a reasonable suspicion of criminal activity from the cumulative information before him. Therefore, we find that the trial court's grant of Defendants' motion to suppress was also in error under a subjective *Terry* stop analysis.

## DECREE

For the above reasons, the trial court's order granting the Defendants' motion to suppress is set aside and this case is remanded to the district court for further proceedings.

**REVERSED AND REMANDED.**

STATE OF LOUISIANA

VERSUS

CHARLES E. MORRIS, GLENIVAN COTTLE, AND DONELL BADGETT, JR.


THIBODEAUX, J., dissenting.


The majority's reliance on *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996), *State v. Lopez*, 02-0562 (La. 10/30/00), 772 So.2d 90, and *State v. Kalie*, 96-2650 (La. 9/19/97), 669 So.2d 879 is misplaced. In *Wren*, *Lopez*, and *Kalie*, the officers pulled over the defendants almost immediately after they committed the traffic violations. In this case, the defendant was not pulled over until much later and after he had traveled approximately 28 miles into another parish. Neither Trooper Bergeron nor Trooper Trahan decided initially to pull over the driver of the Crown Victoria for a traffic violation. According to his testimony, Trooper Bergeron decided to later pursue the Crown Victoria only after he learned that the owner of the Crown Victoria was a passenger in the Suburban that was pulled over, and that the Crown Victoria had not been pulled over.

As the trial court observed and the majority aptly noted but mistakenly interpreted:

> Given the totality of the circumstances, it is apparent that it was not any traffic violation, which caused the Crown Victoria to be stopped in Iberville Parish. Information obtained via police radio between the troopers prompted Trooper Bergeron to again pursue the Crown Victoria. Trooper Bergeron's conduct initiated [sic] that he pursued

defendant Morris, apparently for the sole purpose of discovering possible criminal activity. Such actions were pretexual [sic]. Based upon the information provided to the Court, Trooper Trahan and Trooper Bergeron had no intentions of pursuing the Crown Victoria for the traffic violation committed in St. Martin Parish. Trooper Bergeron's actions were prompted by information received from Trooper Trahan, which resulted from the stop of the Suburban. Therefore, the Court concludes that the motivation or primary purpose underlying the stop of the Crown Victoria was Trooper Bergeron's knowledge that the driver of the Crown Victoria and the occupants of the Suburban were in some way connected to one another, not because of any criminal conduct on the part of the occupants of either vehicle. Therefore, this Court finds that the stop of the Crown Victoria was pretextual and without reasonable or probable cause.

Due to a totality of the circumstances, the Court finds that the stop of the Crown Victoria was unreasonable, without cause, and therefore, violative of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1 sections 2 and 5 of the Constitution of Louisiana.

The trial court found that the trooper pursued the Crown Victoria "apparently for the sole purpose of discovering possible criminal activity" and not for **any** traffic violation. The court later stated that the Crown Victoria was not stopped for any traffic violation. However, it also stated: "Based upon the information provided to the Court, Trooper Trahan and Trooper Bergeron had no intentions of pursuing the Crown Victoria for the traffic violation committed in St. Martin Parish." In the last sentence of its ruling, the court stated that based on the totality of the circumstances, the stop of the Crown Victoria was without cause. I agree.

The majority also errs when it finds a valid *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968) stop. The majority concludes that: "[t]he Louisiana Supreme Court has recognized the validity of what we might call an educated hunch, which officers with significant experience and training are able to utilize while working in the field." To the contrary, our jurisprudence has *never* recognized a "hunch," educated or

2

otherwise. The reasonable suspicion standard under La.Code Crim.P. art. 215.1 is something less than probable cause and something *more* than a hunch. *State v. Flowers*, 441 So.2d 707 (La.1983), *cert. denied*, 446 U.S. 945, 104 S.Ct. 1931 (1984). While the reasonable suspicion is not a very burdensome one, that standard has now been further diluted by the majority to an "educated hunch." Essentially, the majority has disemboweled a very specific codal standard articulated in La.Code Crim.P. art. 215.1. This "educated hunch" now articulated by the majority is the *first* time a court has ever required such a loose standard. As the United States Supreme Court explained in *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585:

> The officer . . . must be able to articulate something more than an 'inchoate and unparticularize suspicion or hunch' . . . . The Fourth Amendment requires 'some minimal level of objective justification' for making the stop. (Citations omitted).

The most important inquiry in assessing the validity of an investigatory stop pursuant to La.Code Crim.P. art. 215.1 is the officer's knowledge at the time of the stop. *State v. Williams*, 421 So.2d 874 (La.1984). In the present case, the State contends Trooper Bergeron had reasonable suspicion to make a *Terry* stop because Defendant Morris was driving a vehicle registered to a passenger in the Suburban, the vehicles were traveling together late at night, and the Suburban committed an apparently deliberate traffic offense. However, Trooper Bergeron did *not* have *all* of this information at the time he stopped the Crown Victoria. Trooper Bergeron did not testify that he had knowledge that the Suburban driver deliberately committed a traffic offense. Trooper Trahan testified that he did not advise Trooper Bergeron over the radio about the illegal lane change by the Suburban. Therefore, at the time Trooper Bergeron stopped the Crown Victoria, the testimony reveals that he knew *only* that a passenger in the Suburban was the registered owner of the Crown Victoria and that they had been seen traveling in the vicinity of each other. He testified that in his

experience the owner of a drug courier vehicle will often travel nearby and try to get the police to pull them over instead. This case is distinguishable from *State v. Johnson*, 02-2081 (La. 4/26/02), 815 So.2d 809 and *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744 (2002) discussed by the majority. In this case there was very little to factor into a "totality of the circumstances" test. In addition, there is no evidence that the driver of the Crown Victoria made any effort to evade the troopers or that the vehicle was traveling in a high-crime area. Further, there was no evidence Trooper Bergeron had any information linking the defendants to drug trafficking. Trooper Bergeron testified that he did not know if Trooper Trahan had requested a criminal history check on the occupants of the Suburban. Therefore, the criminal histories should not be considered as part of the totality of the circumstances. I have been unable to discover a case where a court has held that two vehicles traveling together late at night is conduct peculiarly associated with drug trafficking, and that such conduct could form the basis of reasonable suspicion for a *Terry* stop. The facts in this case combined with the resulting inferences and the officers' experience do not give rise to reasonable suspicion. Without more, the State failed to prove that the stop of the Crown Victoria was based on reasonable suspicion of criminal activity.

In its written reasons for ruling, the trial court found that Trooper Bergeron's knowledge that the occupants of both vehicles were somehow connected to each other, without any criminal conduct by any of the occupants of either vehicle, was insufficient for reasonable suspicion. In *State v. Thomas*, 2002-0471 (La.App. 3 Cir. 10/30/02); 829 So.2d 1137, *writ denied*, 2002-2920 (La. 4/21/03); ___ So.2d ___, this court stated:

> When reviewing a trial court's denial of a motion to suppress, the appellate court looks at the totality of the evidence presented at the suppression hearing. *State v. Bargeman*, 98-617 (La.App. 3 Cir. 10/28/98); 721 So.2d 964, *writ denied*, 99-0033 (La. 5/28/99); 743 So.2d 658.

> Unless the trial court's conclusions are not supported by the evidence or there exists a clear abuse of discretion, an appellate court should not overturn the trial court's ruling. *State v. Purvis*, 96-787 (La.App. 3 Cir. 12/11/96); 684 So.2d 567 (citing *State v. Burkhalter*, 428 So.2d 449 (La.1983)). In other words, the appellate court will give the trial court's determination great weight and will not set aside the trial court's ruling unless clearly mandated by a preponderance of the evidence. *State v. Lewis*, 97-1244 (La.App. 3 Cir. 3/6/98); 728 So.2d 1.

*Id.* at 1139-1140.

The trial court did not abuse its discretion in granting the motions to suppress based on the *Terry* stop. The majority errs and, in so doing, does inestimable violence to established jurisprudential standard and eviscerates the precepts supporting Article 1, Sections 2 and 5 of the Louisiana Constitution and the Fourth and Fourteenth Amendments to the United States Constitution.