# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 13-269

STATE OF LOUISIANA

VERSUS

JEAN-LUC ARISME

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 34723-10
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Billy Howard Ezell, J. David Painter, and James T. Genovese, Judges.

CONVICTION AFFIRMED;
REMANDED WITH INSTRUCTIONS.

Alvin D. Hunt
Post Office Box 281
Lake Charles, Louisiana 70601
(337) 310-9111
COUNSEL FOR DEFENDANT/APPELLANT:
    Jean-Luc Arisme

**John F. DeRosier**
**District Attorney — Fourteenth Judicial District**
**Carla S. Sigler**
**Karen C. McLellan**
**Assistant District Attorneys**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**GENOVESE, Judge.**

In this criminal case, Defendant, Jean-Luc Arisme, entered a *Crosby* plea to the amended charge of possession of marijuana with intent to distribute in connection with a traffic stop. He was given a five-year suspended sentence with special and general conditions of probation. Defendant's guilty plea was entered after the denial of his motion to suppress the marijuana, and he reserved his right to appeal all matters pertaining to his motion to suppress. Defendant is appealing only his conviction pursuant to the trial court's denial of his motion to suppress. For the following reasons, we affirm Defendant's conviction, but remand this matter to the trial court to correct two errors patent.

## FACTS AND PROCEDURAL HISTORY

On July 21, 2010, Defendant was observed driving a motor vehicle on Interstate 10 in Calcasieu Parish by Sergeant Stuart Henderson (Officer Henderson) of the Calcasieu Parish Sheriff's Department. Defendant was stopped and questioned by Officer Henderson due to improper lane usage (signal violation) and dark tinted windows. Defendant's vehicle had a Florida license plate and was an Enterprise rental car on which he was listed as an additional operator of the vehicle. Defendant had a passenger in the vehicle with him. The occurrence was videotaped via camera on Officer Henderson's vehicle.

In speaking with Defendant, Officer Henderson became suspicious when Defendant was unable to provide the last name of his passenger, and he and the passenger gave conflicting accounts of their whereabouts on a recent trip to Houston, Texas. Officer Henderson also stated that he found it unusual and suspicious for a rental vehicle to have such dark tint on the front windows.

After his investigation, Officer Henderson issued a Notice of Violation to Defendant, returned his documentation to him, and advised him he was being

released as a courtesy. Immediately thereafter, Officer Henderson asked Defendant for permission to search the vehicle. According to the audio and video recording of the stop, Defendant seemingly refused. Following Defendant's apparent refusal, Officer Henderson retrieved his drug dog from his vehicle, and the dog alerted to a narcotic odor emitting from the rear of Defendant's vehicle. Approximately sixty pounds of marijuana were found in a suitcase in the trunk of the vehicle. Both Defendant and his passenger were arrested.

On November 18, 2010, Defendant was charged by bill of indictment with one count of possessing 60 to 2000 pounds of marijuana, a violation of La.R.S. 40:966(F)(1). Defendant entered a plea of not guilty to the charge and subsequently filed a motion to suppress the evidence seized as a result of the warrantless search of his vehicle. The trial court heard the motion to suppress, at which hearing defense counsel waived Defendant's presence. The trial court denied the motion. Thereafter, the State amended the charge against Defendant to possession of marijuana with the intent to distribute. Defendant entered a *Crosby* plea to the amended charge, reserving his right to appeal "all matters pertaining to those motions to suppress." The trial court accepted Defendant's guilty plea and sentenced him to five years.[1]

The trial court suspended the sentence and placed Defendant on three years of probation with the following conditions of probation: 1) register with probation and parole and pay a "$60 monthly visit fee and $75"; 2) be subject to random drug screening; 3) maintain all of the conditions set forth in La.Code Crim.P. art. 895; and, 4) pay a $250.00 fee to the Southwest Louisiana Crime Lab.

---

[1]According to the sentencing transcript, the trial court did not state whether the five-year sentence was to be served with or without hard labor; however, that issue is not before the court, as Defendant is only appealing his conviction and not his sentence.

2

Additionally, the trial judge authorized Defendant's probation to be transferred to Tallahassee, Florida, provided Florida would accept his probation.

Defendant filed a timely Motion for Appeal and Designation of Record which was granted by the trial court. Defendant is now before this court, alleging trial court error in its denial of his motion to suppress.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we note two errors patent.

First, as a condition of probation, the trial court ordered a $250.00 fee to the Louisiana Crime Lab, for which a payment plan was not established. In *State v. Wagner*, 07-127, pp. 7-8 (La.App. 3 Cir. 11/5/08), 996 So.2d 1203, 1208, this court held in pertinent part:

> When the fines and costs are imposed as a condition of probation, but the trial court is silent as to the mode of payment or the trial court attempts to establish a payment plan, this court has required a specific payment plan be established. *See State v. Theriot*, 04-897 (La.App. 3 Cir. 2/9/05), 893 So.2d 1016 (fine, court costs, and cost of prosecution); *State v. Fuslier*, 07-572 (La.App. 3 Cir. 10/31/07), 970 So.2d 83 (fine and costs); *State v. Console*, 07-1422 (La.App. 3 Cir. 4/30/08), 981 So.2d 875 (fine and court costs).

> We view this procedure as no different from payment plans for *restitution*. *See State v. Dean*, 99-475 (La.App. 3 Cir. 11/3/99), 748 So.2d 57, *writ denied*, 99-3413 (La.5/26/00), 762 So.2d 1101 (restitution only), *State v. Reynolds*, 99-1847 (La.App. 3 Cir. 6/7/00), 772 So.2d 128 (restitution, fine, and costs), *State v. Stevens*, 06-818 (La.App. 3 Cir. 1/31/07), 949 So.2d 597 (restitution, fine, court costs, and reimbursement to Indigent Defender Board), and *State v. Fontenot*, 01-540 (La.App. 3 Cir. 11/7/01), 799 So.2d 1255 (restitution, court costs and payments to victim's fund, Indigent Defender Board, and District Attorney).

> We, therefore, remand this case to the trial court for establishment of a payment plan for the fine, noting that the plan may either be determined by the trial court or by Probation and Parole, with approval by the trial court. *See Stevens*, 949 So.2d 597.

Similarly, the trial court's ordering the payment to the crime lab fund during the period of probation is an insufficient payment plan. We also remand the case to the trial court for establishment of a payment plan for these costs, noting that the plan may either be determined by the trial court or by Probation and Parole, with approval by the trial court. *See Stevens*, 949 So.2d 597.

This issue has been similarly resolved in other cases. *See State v. LaCombe*, 09-544 (La.App. 3 Cir. 12/9/09), 25 So.3d 1002, and *State v. Snelling*, 09-1313 (La.App. 3 Cir. 5/5/10), 36 So.3d 1060, *writ denied*, 10-1301 (La. 12/17/10), 51 So.3d 16. Accordingly, we remand this case to the trial court for the establishment of a payment plan for the fee, noting that the plan may either be determined by the trial court or by the Department of Probation and Parole with approval by the trial court. *See Stevens*, 949 So.2d 597.

Next, according to the sentencing transcript, as a condition of the Defendant's probation, the trial judge ordered that he "register with the probation and parole and pay $60 monthly visit fee and $75." The court minutes and the Conditions of Probation form (signed by Defendant and a probation officer six days after sentencing) indicate that Defendant was ordered to pay a monthly fee of $75.00 to the Office of Probation and Parole with $60.00 designated for supervision and $15.00 for the technology registration fund. However, the form is not signed by the trial judge, thereby rendering the condition of probation requiring the Defendant to pay $75.00 ambiguous. It is unclear from the sentencing transcript whether the $75.00 payment is a one-time payment or a monthly payment, nor is it clear whether it is included in or is in addition to the $60.00 payment. While the court minutes and Conditions of Probation form offer a reasonable interpretation, the transcript controls in the case of a conflict between the minutes and transcript. *State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Therefore, we

4

instruct the trial court that, upon remand, it is to clarify the details of the $75.00 payment it imposed as a condition of probation. *See State v. Peeler*, 05-615 (La.App. 3 Cir. 12/30/05) (unpublished opinion).

## ASSIGNMENT OF ERROR

In his lone assignment of error, Defendant contends that "the trial court erred in finding reasonable suspicion that [he] engaged in any criminal conduct after he was released from the traffic stop, thus allowing law enforcement to conduct a second detainment and expanded search not supported by any new articulable suspicion of illegal activity."

## DISCUSSION

Defendant alleges that the trial court erred in denying his motion to suppress the evidence seized during the warrantless search of his vehicle. Defendant claims that after he was "ostensibly" stopped for having dark tinted windows and making an illegal lane change, Officer Henderson issued to Defendant a Notice of Violation and told him that he was being released. The video recording (DVD) of the traffic stop was introduced as exhibit D-1 at the motion to suppress hearing. The traffic noise makes it difficult to hear what is being said on the DVD, but Officer Henderson did issue to Defendant a Notice of Violation and told him he was being released as a courtesy instead of being given a ticket. The actual Notice of Violation stated, "You are released as a courtesy."

Immediately after Officer Henderson informed Defendant that he was released as a courtesy, he told Defendant that he had seen lots of "crazy stuff" and asked him if he had anything illegal in the car. When Defendant answered, "No," Officer Henderson asked to search the vehicle. Defendant denied Officer Henderson's request to search the vehicle, at which time Officer Henderson

5

retrieved his dog from the police unit, conducted a sweep of the vehicle, and found marijuana in the trunk of the vehicle.

In brief, Defendant argues that Officer Henderson failed to acquire a "new" reasonable suspicion after his release from the traffic stop. According to Defendant, the original traffic stop was over when the officer released him, and no new exigent circumstances occurred to justify the enlargement of the search. Defense counsel summarizes his argument as follows:

> This [a]ppeal boils down to this: Mr. Arisme was released and arrested during the same traffic stop. At the end of the day, Officer Henderson botched his stop and investigation under La.C.Cr.P. Art. 215.1(D): he put the horse behind the cart; or in this case, the dog behind the cart. At the end of his ten minute questioning of the defendant and his guest passenger, the physical issuing of the citation and telling Mr. Arisme he was being released as a courtesy, the stop and investigation, pursuant to La.C.Cr.P. art. 215.1(D) was over. No new exigent circumstances are presented in the record by Officer Henderson, nor does he articulate any new rationale to enlarge his search.

We find that Defendant is precluded from raising this "new" reasonable suspicion argument on appeal since he failed to raise this argument in either his written motion to suppress or at his hearing on the motion to suppress. In his written motion to suppress, Defendant alleged that when the officer stopped him, the officer lacked reasonable suspicion that he was committing, had committed, or was about to commit a crime. The written motion to suppress also alleged that the subsequent search of Defendant's vehicle was conducted without probable cause to search, without consent to search, without a warrant to search, and without an exception to the warrant requirement. At the hearing on his motion to suppress, defense counsel argued as follows:

MR. HUNT:

> Your Honor, several things. If you watched the video, Your Honor, it goes almost 10 minutes and 27 seconds of questioning, walking around the car, looking at the car. Referring back to the tint,

6

at no time in that 10 minutes and 27 seconds did he look at the window directly or ask any questions about the window so it's sort of boot strapping this whole dark tint argument into all the suspicion I think is [sic] a bit of revisionist history once the report was written. If this was such a big deal, that should've been brought up in the first 10 minutes and 27 seconds. Then he signs the ticket at 10 minutes and 34 that says we're releasing you to go and the next follow-up question at 10 42 is - -

THE COURT:

He was just stalling. He had already decided he was going to have the dog check the car. We all know that.

MR. HUNT:

Other than articulating about the energy drink or the passenger looking ahead and all of these other things, his statement was I just see a bunch of crazy stuff out here. Well, life is crazy. I see crazy stuff in my office everyday[,] but that doesn't mean anything.

Considering Defendant's written motion to suppress and his counsel's oral argument, we find that Defendant did not raise in the trial court the same argument he is now raising on appeal – that Officer Henderson failed to acquire "new" reasonable suspicion after the alleged conclusion of the traffic stop by the issuance of the Notice of Violation.

Louisiana courts have long held a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a motion to suppress. *State v. Brown,* 434 So.2d 399 (La.1983) (rejecting defendant's alternative argument regarding the denial of his motion to suppress because he had not raised the issue at trial); *State v. Johnson,* 07-1040 (La.App. 4 Cir. 9/10/08), 993 So.2d 326 ("failure to raise a ground for suppressing an item of evidence in a properly filed motion to suppress waives such a basis for exclusion on appeal"); *State v. Jackson,* 04-1388 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, *writ denied,* 05-1740 (La.2/10/06), 924 So.2d 162 (defendant is limited on appeal to the grounds he articulated at trial and a new basis for a claim, even if it would be meritorious, cannot be raised for the first time on appeal); *see* La.C.Cr.P. art. 841 (providing that a new basis for an objection cannot be raised for the first time on appeal).

*State v. Montejo,* 06-1807, p. 22 (La. 5/11/10), 40 So.3d 952, 967-68, *cert. denied,*

___ U.S. ___, 131 S.Ct. 656 (2010) (footnote omitted). Therefore, Defendant is

7

prohibited from raising the "new" reasonable suspicion argument for the first time on appeal.

Even if we were to consider Defendant's "new reasonable suspicion" argument, a similar argument was rejected in *State v. Burton*, 93-828 (La.App. 3 Cir. 2/23/94), 640 So.2d 342, *writ denied*, 94-617 (La. 4/7/94), 641 So.2d 203. In *Burton*, the officers stopped Burton and his passenger for speeding. Questioning of Burton and his passenger revealed conflicting stories and extreme nervousness. Either during or after the questioning, one of the officers "filled out a Consent to Search Form, handed Burton back his driver's license[,] and told him to slow down." *Id.* at 344. As Burton walked back to his vehicle, an officer explained to him what the Consent to Search Form entailed. When Burton refused to give consent to search, one of the officers radioed for a canine to be brought to the scene. When the canine alerted to the presence of drugs, the officers searched the vehicle and found contraband.

In *Burton*, 640 So.2d at 346, this court addressed an argument similar to the "new" reasonable suspicion argument raised by Defendant in brief:

> Defendants argue in their brief that once the purpose for the initial stop had concluded and the defendants were told they were "free to go," any action taken by the police to search the defendants' vehicle was in violation of the defendants' right to be free from unreasonable searches and seizures. Trooper LaFleur filled out the Consent to Search form before he returned defendant-Burton's driver's license and told the defendants they were free to go; he asked defendant-Burton to look at the Consent to Search form seconds later. It is obvious that the trooper had the intent to search the defendants' vehicle after he had completed the routine duties for a traffic stop. The fact that the trooper finished the steps for the traffic stop with the statement "you are free to go" should not be construed to mean that all proceedings were concluded, that the initial reasonable suspicion had been dispelled, and that before any further actions could be taken the police had to re-establish reasonable suspicion on other grounds.

Likewise, in the instant case, Officer Henderson's completion of the steps of the traffic stop with the issuance of the Notice of Violation should not be construed

to mean that all proceedings were concluded and that Officer Henderson's initial reasonable suspicion had been dispelled. When defense counsel asked Officer Henderson if he was finished with the investigation of the improper lane change at the time he gave Defendant the Notice of Violation, Officer Henderson replied, "When I handed his stuff back, he was free to go. His vehicle wasn't going anywhere though." At that point, Officer Henderson testified, he already had a reasonable articulable suspicion that Defendant and his passenger were engaging in criminal activity. When Officer Henderson initially saw Defendant's vehicle, he noticed dark tint on the windows. Officer Henderson then saw Defendant make an improper lane change and stopped his vehicle. As Officer Henderson approached Defendant's vehicle, he confirmed that the tint on the vehicle was dark. Upon speaking with Defendant, Officer Henderson learned that the vehicle was a rental vehicle. Officer Henderson knew that it was "unusual and suspicious" for a rental vehicle to have dark tint on the front window. Officer Henderson also learned that the rental was overdue. While Officer Henderson spoke with Defendant, he noticed that the passenger stared straight ahead without looking at the officer. He interpreted the passenger's action as nervousness. Officer Henderson also became suspicious when he asked Defendant to step out of the vehicle, and, before he did so, Defendant took a "huge gulp" of a Monster energy drink sitting in his console. Finally, Officer Henderson's questioning of both Defendant and his passenger revealed conflicting accounts of their itinerary for the past few days.

According to Officer Henderson, his decision to bring the dog out had nothing to do with the Defendant's refusal to give consent to search but with all of his "reasonable suspicion prior to [his] asking [Defendant for consent]." Officer Henderson further explained:

I believed there was [sic] drugs in the vehicle. The easiest way to get in there is with a consent. I had enough, based on my training and experience, I had enough reasonable articulable suspicion to believe there was [sic] narcotics in the vehicle. The vehicle was not free to go at that point. I was going to walk my canine if he refused, which he did.

It is clear from Officer Henderson's testimony that, based on his reasonable suspicion, he intended to search Defendant's vehicle once he completed the routine duties for a traffic stop. Thus, as this court found in *Burton*, we find that Officer Henderson's issuance of the Notice of Violation did not mean that all proceedings were concluded or that Officer Henderson's initial reasonable suspicion had been dispelled. Additionally, as the court found in *Burton,* Officer Henderson's issuance of the Notice of Violation did not trigger the need for Officer Henderson to acquire "new" reasonable suspicion before he acted any further.

In brief, Defendant futilely attempts to distinguish the supreme court's decision in *State v. Lopez*, 00-562 (La. 10/30/00), 772 So.2d 90, wherein the supreme court found that the marijuana seized in Lopez's car should not be suppressed. In making this finding, the supreme court disagreed with this court's finding that the trooper's questioning of Lopez exceeded the original justification for the stop, which was a speeding violation. Citing *Burton*, 640 So.2d 342, the supreme court held that the trooper acquired reasonable suspicion to enlarge the scope of his investigation when Lopez and his wife exhibited "agitated demeanor[s]" and gave "conflicting accounts of their itinerary[.]" *Id.* at 93. In *Lopez*, the court further stated that "[t]he arrival of a drug-detection dog on the scene within minutes of the stop afforded the officer the opportunity to 'pursue[ ] a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain the defendant.'" *Id.* at 93 (quoting *United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575 (1985)) (second

10

and third alterations in original). Noting that the dog's sniffing around the exterior of Lopez's vehicle was not a search, the supreme court held that the dog's "subsequent alert," which was consistent with Lopez's extreme nervousness, "gave the officers probable cause to search for contraband." *Id.* (citing *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637 (1983), and *United States v. Seals*, 987 F.2d 1102 (5th Cir. 1993), *cert. denied*, 510 U.S. 853, 114 S.Ct. 155 (1993)).

Defendant, in the present case, attempts to distinguish *Lopez* by arguing that the investigation in *Lopez* was still ongoing when the drug dog arrived and Lopez was being interrogated. Defendant argues that Officer Henderson chose to keep the dog in the back of the patrol unit during his investigation and did not bring him out until after the Notice of Violation was issued. We find this distinction insignificant. As in *Lopez*, Officer Henderson's investigation was still ongoing when he retrieved the drug dog. As previously discussed, this court's decision in *Burton* warrants a finding that Officer Henderson's investigation of the original stop did not end upon the issuance of the Notice of Violation. Thus, when Officer Henderson retrieved his drug dog, he was continuing to investigate his suspicion of criminal activity that developed as a result of the initial stop. As Officer Henderson testified, based on his reasonable suspicion, he intended to investigate further, either by consent to search or by walking the canine.

For the reasons set forth in *Burton*, we find that Officer Henderson was not required to acquire new reasonable suspicion after he issued the Notice of Violation. Rather, we find that Officer Henderson was continuing to investigate the reasonable suspicion acquired from the initial stop. Thus, even assuming arguendo that Defendant had properly preserved his "new" reasonable suspicion argument, that argument and his assignment of error lack merit.

## DISPOSITION

Defendant's conviction is affirmed. Additionally, we remand this case to the trial court for the establishment of a payment plan for the $250.00 fee to the Louisiana Crime Lab, noting that the plan may either be determined by the trial court or by the Department of Probation and Parole with approval by the trial court. And, we instruct the trial court to clarify the details of the $75.00 payment set forth in the conditions of probation.

**CONVICTION AFFIRMED; REMANDED WITH INSTRUCTIONS.**