STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1438

STATE OF LOUISIANA

VERSUS

LLOYD FUSLIER

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, DOCKET NO. CR-05-0789
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and James T. Genovese, Judges.

AFFIRMED IN PART;
REMANDED WITH INSTRUCTIONS.

James E. Burks
Post Office Box 16067
Lake Charles, Louisiana 70601
(337) 474-6106
COUNSEL FOR DEFENDANT/APPELLANT:
    Lloyd Fuslier


Douglas L. Hebert, Jr.
District Attorney - Thirty-third Judicial District
ADA Sherron Ashworth
Post Office Box 839
Oberlin, Louisiana 70655
(337) 639-2641
COUNSEL FOR APPELLEE:
    State of Louisiana

**GENOVESE, Judge.**

Lloyd Fuslier (Fuselier[1]) was charged by Bill of Information on March 4, 2005 with one felony count of first degree vehicular negligent injuring, a violation of La.R.S. 14:39.2; one misdemeanor count of vehicular negligent injuring, a violation of La.R.S. 14:39.1; one misdemeanor count of operating a vehicle while intoxicated, first offense, a violation of La.R.S. 14:98; and, one misdemeanor count of driving left of center, a violation of La.R.S. 32:71. On May 17, 2006, pursuant to bench trial, the trial court found Defendant guilty as charged on all four counts.

On September 1, 2006, Defendant was sentenced as follows:

1. Pursuant to the felony conviction for first degree vehicular negligent injuring, Defendant was sentenced to four years at hard labor, with all but six months suspended. Following release, Defendant was placed on four years supervised probation, with general and special conditions of probation, fees, and court cost. Defendant was also ordered to pay restitution to the victim of two thousand two hundred eighty-three dollars and thirty-eight cents;

2. Pursuant to the misdemeanor conviction for vehicular negligent injuring, Defendant was sentenced to serve six months in the parish jail, to run concurrently with the previously imposed sentence;

3. Pursuant to the misdemeanor conviction for operating a vehicle while intoxicated, first offense, Defendant was sentenced to six months in the parish jail, to run concurrently with the two

---

[1]This court notes that throughout the record, Defendant's name is alternately spelled "Fuselier" and "Fuslier."

previous sentences, plus a fine of five hundred dollars; and,

4. Pursuant to the misdemeanor conviction for driving left of center, Defendant was ordered to pay a fine of one hundred dollars within three months of his release from jail, or serve an additional ten days.

Defendant has timely perfected an appeal, asserting there was insufficient evidence to sustain two of the misdemeanor convictions and the one felony conviction as presented to the trier of fact. After a complete review of the record, we find that the evidence was sufficient for the trier of fact to determine beyond a reasonable doubt that Defendant was guilty as charged on the misdemeanor offenses; and, due to error patent, we pretermit adjudication as to the felony offense of first degree negligent injuring pending a hearing, after remand, on the issue of whether or not Defendant knowingly and intelligently waived his right to counsel on said felony offense.

**FACTS**

On a rainy evening, December 3, 2004, at approximately ten o'clock, Defendant, alone at the time, was driving his truck in a westerly direction on Highway 190 toward Kinder, Louisiana. The victims, A.C. and L.F.,[2] both fifteen years old at the time, were traveling in a Chevy Impala in an easterly direction toward Elton, Louisiana, with A.C. driving. Defendant's truck crossed the centerline of the roadway and struck the Chevy Impala. A.C. received severe injuries. L.F. received minor injuries. It was later determined that Defendant's blood/alcohol concentration was 0.12 percent.

---

[2]As required by La.R.S. 46:1844(W), the victims' names are replaced with initials to protect their identity.

2

**PROCEDURAL ISSUE**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent. Upon reviewing the record, we find one error patent and one procedural issue. The error patent will be addressed in the errors patent section of this opinion. We will first discuss the procedural issue as it addresses whether Defendant's misdemeanor convictions are properly before this court for review.[3]

Because these charges were not triable by jury, the normal mode of appellate review for these offenses is an application for writ of review rather than an appeal. La.Code Crim.P. art. 912.1(C). In *State v. Turner*, 04-1250 (La.App. 3 Cir. 3/2/05), 896 So.2d 286, *writ denied*, 05-871 (La. 12/12/05), 917 So.2d 1084, this court severed a misdemeanor conviction for possession of marijuana from the defendant's appeal of two felony convictions. This court ordered the "defendant to file a writ of review regarding the possession of marijuana conviction in compliance with the Rules of Court." *Id.* at 289.

In *Turner*, the court noted that the defendant did not make any specific arguments regarding the misdemeanor conviction. In the present case, however, Defendant's attorney attacks Defendant's convictions for the felony and two of the three misdemeanors on the grounds of insufficiency of the evidence. Since Defendant's brief covers the felony and only two of the three misdemeanor convictions, we will not sever the misdemeanor convictions; rather, in the interest of judicial economy, we will address them in the present appeal. We note that the first circuit has stated the following in a similar circumstance:

> This appeal relates to both defendant's felony convictions and his

---

[3]We note that Defendant's conviction for D.W.I., first offense, is not before this court on appeal, as Defendant does not specifically challenge this conviction.

misdemeanor convictions. Normally, misdemeanor convictions would not be appealable. Instead, defendant could petition an appellate court for a writ of review. However, when the charges in the two bills of information were consolidated, they became a single "case." Because defendant was entitled to a jury trial, upon conviction he was entitled to appeal the "case." *See* La. Const. art. I, § 17; La.C.Cr.P. arts. 706 and 912.1(B); *State v. Comeaux*, 408 So.2d 1099, 1103, 1104 (La.1981).

*State v. Swan*, 544 So.2d 1204, 1206 n.3 (La.App. 1 Cir. 1989). Considering the foregoing, though the proper legal procedure is to apply for a writ of review, not file an appeal, we will address these two misdemeanor convictions in the present appeal.

As will be discussed below in the errors patent section of this opinion, it is impossible to determine from the record in the present case whether Defendant's waiver of his right to a jury trial on the felony charge of first degree vehicular negligent injuring was knowingly and intelligently made. However, this court must first consider whether there is any merit to Defendant's assignment of error in which he challenges the sufficiency of the evidence. *See State v. Clark*, 97-1064 (La.App. 3 Cir. 4/1/98), 711 So.2d 738, *writ granted and case remanded in light of supplemental filing*, 98-1180 (La. 9/25/98), 726 So.2d 2[4] and *State v. Morris*, 615 So.2d 327 (La.1993).

## ASSIGNMENT OF ERROR

As his sole assignment of error, Defendant asserts that the evidence was insufficient to sustain the convictions. Specifically, Defendant argues there was insufficient evidence to establish that it was his vehicle that crossed over the centerline of the roadway.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the

---

[4]The supreme court remanded the case to this court for reconsideration of its order in light of its receipt of a supplemental transcript. This court's opinion on reconsideration of the case is reported at *State v. Clark*, 97-1064 (La.App. 3 Cir. 11/25/98), 735 So.2d 649.

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan,* 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant was charged with first degree vehicular negligent injuring. This offense is described, in pertinent part, as follows:

> A. First degree vehicular negligent injuring is the inflicting of serious bodily injury upon the person of a human being when caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance whenever any of the following conditions exists:

> (1) The offender is under the influence of alcoholic beverages.

> (2) The offender's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

> . . . .

> C. For purpose of this Section, "serious bodily injury" means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member or organ or a mental faculty, or a substantial risk of death.

La.R.S. 14:39.2.

Vehicular negligent injuring is defined as:

> A. Vehicular negligent injuring is the inflicting of any injury upon

the person of a human being when caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of any motor vehicle, aircraft, watercraft, or other means of conveyance whenever any of the following conditions exists:

(1) The offender is under the influence of alcoholic beverages.

(2) The offender's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

La.R.S. 14:39.1.

The offense of operating a vehicle while intoxicated occurs when the operator of a vehicle "is under the influence of alcoholic beverages; or (b) [when] [t]he operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood." La.R.S. 14:98.

Finally, a driver is mandated to drive on the right side of the roadway unless "passing another vehicle proceeding the same direction under the rules governing such movement," or "[w]hen the right half of a roadway is closed to traffic," or "[u]pon a roadway designated and signposted for one-way traffic." La.R.S. 32:71. The State of Louisiana (State) alleged Defendant illegally drove his vehicle into the left lane.

Both victims testified at trial. A.C., who was eighteen at the time of trial, testified she was driving her mother's Chevy Impala. She stated that she and her best friend, L.F., had gone to a church function in Kinder. At approximately 9:30 p.m., they left and went to Market Basket for a few minutes. She then drove along Highway 190 toward Elton to take L.F. home. A.C. has no recollection of the accident. Although she recalled it being a rainy night and seeing oncoming traffic, she did not recall seeing Defendant's truck. A.C. testified that one moment she was talking with L.F., and the next moment she woke up in the hospital. She testified that

6

the orbital bones in her face were broken in several places and her jaw was crushed. She had to have a tracheotomy in order to breathe. She has had at least ten operations to reconstruct her face. A.C. identified pictures taken of her shortly after the accident. She stated that besides being permanently scarred, she had to have a shunt placed from her left eye to her nose to allow drainage because her eye no longer drains properly, and she appears to be crying all the time.

L.F.'s testimony corroborated A.C.'s testimony. L.F., who was seventeen at the time of trial, also did not see Defendant's truck. She stated she was looking out the passenger side window when the accident occurred. She said she suffered a bruised hip and knee, and has had no continuing problems from the injuries.

At the time of the accident, Roy Dean Strother, since retired, was a "Master Trooper" with the Allen Parish Sheriff's Office. He was an accident investigator and was the lead investigator in this case. Since retirement, he has worked as a consultant for the sheriff's office in accident reconstruction. He was accepted by the trial court as an expert in crash scene investigations. Strother testified that it had been raining on and off all day and into the evening. He was called to the scene about 10:09 p.m. He identified pictures he had taken that night of the condition of the roadway and of the truck and the car. He testified that the truck had crossed the center and struck the victims' car. He explained that the two vehicles impacted approximately two feet south of the centerline, which would have made the point of impact in the eastbound lane. He stated that he determined where the point of impact occurred by the distribution of the debris left from the car and truck as a result of the impact, the type of damage done to the two vehicles, the final resting place of the vehicles, and from what he identified as a gouge in the roadway, which was approximately two feet

7

south of the centerline.

Strother stated that after he took pictures that night, he went to the hospital to see if he could speak with Defendant and the victims. He said that upon encountering Defendant, he detected a strong odor of alcohol and had the nurse take a sample of Defendant's blood for a blood/alcohol concentration test. The results of the laboratory examination indicated that at the time of the extraction of the sample, Defendant's blood contained "0.12 gram percent of ethyl alcohol."

Strother testified that he did not ask either Defendant or the victims what had happened. Defendant would not speak to him, and the victims could not recall the accident. He stated he did not mark the point of impact or the final resting places of the vehicles with paint the night of the accident because the paint would have been washed away by the rain. He admitted a gouge in the roadway could not be seen in any of the pictures he took the evening of the accident. Moreover, he did not return to the accident site the next day to take pictures. He stated he had marked the location by noting in his report that the point of impact was at the 74-mile post marker.

Jason Fontenot, a patrolman with the Kinder Police Department, was one of the first officers to arrive at the accident scene. His testimony essentially corroborated Strother's. He described the position of the vehicles in relation to the roadway and the debris field left from the collision that was in the middle of the eastbound lane.

Roger Thomas, an accident reconstructionist for the Calcasieu Parish Sheriff's Office, testified as to how, in his opinion, the accident occurred. He was accepted as an expert in accident reconstruction. Thomas testified that on April 25, 2006, he visited the crash site with Roy Strother, who described for him the scene on the night

8

of the accident. He reviewed Strother's reports, diagrams of the site, and photographs. He stated Strother pointed out to him the gouge mark in the roadway at the supposed point of impact in the eastbound lane.

After somewhat long and somewhat confusing testimony, Thomas concluded Defendant's truck crossed the centerline at approximately nine degrees off the central axis of the westbound lane and struck the victim's car.

> Okay. So, number one [Defendant's truck] is at a greater speed, heavier vehicle, going much further after post impact distance than vehicle two [victim's car] did, westbound, veers slightly, about approximately ten degrees, nine or ten degrees, across the yellow line, into the - - partially into the east bound lane of 190 at which time the left front area - - and I haven't looked at photo on [sic] number one, - - but looking at this one I can almost tell you where this one would be - - but, left from area, okay of vehicle one impacted the [sic] right there at the front, the left front, right behind the bumper area, left front side car panel of number two at initial impact. And of course I can tell that by, again, by the angle, and again by the - - where the vehicles ended up, they would have come out of the east bound lane of 190.

Thomas arrived at this conclusion after considering the assumed point of impact, the weight of the two vehicles, the final resting place of the two vehicles after impact, and the distance of each vehicle from the point of impact. The truck ended up in the ditch off the south side of the eastbound lane, and the car stopped part way off the road in the westbound lane. He considered the damage done to the vehicles. The truck had damage to its left front bumper and fender, while the damage to the car extended from its left front bumper and fender down to and along the driver's side door panel. He also considered the location of the debris on the roadway, which was scattered in a southwesterly manner from the point of impact.

On cross-examination, Thomas admitted he did not see a photograph of the damage done to the truck, but relied only on Strother's description. He further agreed that there was no way to know for certain whether the gouge he saw in the eastbound

9

lane at the alleged position of the point of impact was the gouge left by this particular event.

Finally, Zachary J. Lee, a private investigator from Lake Charles, Louisiana, testified on behalf of Defendant as an accident reconstructionist. He stated he went to the accident site in March 2005. He stated he visited the crash site using, as a guide, Strother's report indicating the point of impact at mile post seventy-four. He testified he saw nothing to indicate that the accident had occurred in the location Roy Thomas's report indicated. Lee primarily addressed inconsistency in Thomas's report. He pointed out, as inconsistent, certain distances of the vehicles from the alleged point of impact to where each vehicle was alleged to have come to rest. He stated there was no way to conclusively establish a point of impact from the photographs or Strother's report and Thomas's report. He stated, "Mr. Thomas, he makes several statements to irrefutable facts and provable facts, but I have not seen any proof."

On cross-examination, Lee admitted he never talked with Strother regarding the accident scene on the night of the accident. He stated he did not do an accident reconstruction. However, he testified he did not agree with Thomas's hypothesis that if the truck hit the car at a nine-degree angle from the central axis of the westbound lane, the vehicles would have come to rest in the positions shown in the photographs. Although, he did state the damage to the car was indicative of another vehicle "coming in at a nine degree angle."

Defendant's entire argument of insufficient evidence is premised primarily on the assertion that there was no conclusive evidence that it was Defendant who crossed the centerline. This court finds that the evidence was sufficient, however, to allow

10

the trier of fact to conclude beyond a reasonable doubt that Defendant did cross the centerline, thus causing the collision between his truck and the victims' vehicle. Patrolman Fontenot and Roy Strother both testified as to the position of the vehicles after the accident and that the debris field which resulted from the collision was located in the eastbound lane, indicating Defendant left his lane of travel and entered the victims' lane. Pictures of the damage to the car were submitted, which tended to indicate that the truck turned into the car. Moreover, the evidence that Defendant was under the influence of alcohol at the time of the collision was not refuted.

While Defendant's expert witness testified that there was no evidence to suggest that it was Defendant who crossed the centerline, he did not conduct any accident reconstruction, and he agreed that the damage sustained by the car as depicted in the photograph was consistent with the truck coming into the eastbound lane of travel and hitting the car at a nine-degree angle.

This court finds that the State met its burden of proving all of the necessary elements of the misdemeanor offenses of vehicular negligent injuring and driving left of center beyond a reasonable doubt.

## ERRORS PATENT

In our error patent review, we note one error patent. Defendant in this case was charged in a single bill of information with the felony charge of first degree vehicular negligent injuring and the misdemeanor offenses of vehicular negligent injuring, operating a vehicle while intoxicated, first offense, and driving left of center. The offense of vehicular negligent injuring is punishable by a fine of not more than one thousand dollars or imprisonment for not more than six months, or both. La.R.S. 14:39.1(C). For operating a vehicle while intoxicated, first offense, the punishment

11

is a fine of not less than three hundred dollars nor more than one thousand dollars and imprisonment for not less than ten days nor more than six months. La.R.S. 14:98(B). Finally, driving left of center carries a fine of not more than one hundred seventy-five dollars, or imprisonment for not more than thirty days, or both.[5] La.R.S. 32:71 and La.R.S. 32:57(A). Accordingly, Defendant was not entitled to a jury trial on any of these three misdemeanor offenses. La.Code Crim.P. art. 779(B). Because Defendant *was entitled* to a jury trial for the felony charge of first degree vehicular negligent injuring, and *was not entitled* to a jury trial on the misdemeanor charges, the offenses were not triable by the same mode of trial and should not have been charged in the same bill of information. *See* La.Code Crim.P. art. 493. However, because Defendant failed to file a motion to quash the information based on the misjoinder, he waived any objection to the error. La.Code Crim.P. art. 495; *State v. Mallett*, 357 So.2d 1105 (La.1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 848 (1979). Accordingly, we find that the issue of misjoinder is waived.

However, the record is not clear as to whether Defendant *knowingly and intelligently waived his right to a jury trial*. Defendant was entitled to a jury trial on the felony charge of first degree vehicular negligent injuring. In the record, there is a written motion requesting a bench trial filed on May 11, 2006. The motion is signed by defense counsel, but not Defendant. The motion was granted by the court the same day. There is no indication in the court minutes that May 11, 2006 was a court day in this case.

To determine whether there was a discussion in open court of the waiver of jury

---

[5]We note the last sentence of Paragraph (2) of La.R.S. 32:71(B) provides a different penalty for a violation of that particular Paragraph. It does not appear from the bill of information that this particular Paragraph was at issue in this case.

trial, we have examined the court minutes and found no reference to the waiver of the right to a jury trial. Accordingly, we requested information from the lower court concerning any discussion of the waiver of this right and were informed that there are no minute entries concerning a discussion of Defendant's waiver of a jury trial. Additionally, we were informed by the trial court that after reviewing all recordings and notes relative to pretrial hearings, trial, and sentencing, the trial court was unable to locate "testimonial evidence regarding defendant's waiver of right to a jury trial."

Thus, the issue in this case is whether a written waiver signed by defense counsel, but not Defendant, was sufficient to waive Defendant's right to a jury trial.

In *State v. Morris,* 607 So.2d 1000 (La.App. 3 Cir. 1992), *judgment set aside on other grounds & remanded*, 615 So.2d 327 (La.1993),[6] this court was faced with this very issue. Setting forth the general law regarding waiver of a defendant's right to a jury trial, this court stated:

> Our Louisiana Constitution of 1974, Art. I, section 17 entitles an accused to a trial by jury which he may relinquish except in capital cases. La.C.Cr.P. art. 780 repeats this right and provides that a defendant "may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment the defendant in such cases shall be informed by the court of his right to waive trial by jury." While one who is entitled to a jury trial may waive that right, such waiver shall not be presumed but must be established by a contemporaneous record setting forth the articulated appraisal of that right followed by a knowing and intelligent waiver by the accused.

[6]The supreme court set aside the judgment of this court because it had pretermitted a ruling on the sufficiency of the evidence. On remand of the case to this court, the defendant's conviction for third offense DWI was reversed and the case remanded for retrial on the lesser offense of first offense DWI. *State v. Morris*, 619 So.2d 184 (La.App. 3 Cir. 1993).

We note that the supreme court, in a footnote in *Morris*, stated, "The state has not sought review of this decision, and we therefore do not consider whether the appellate court's treating the jury waiver issue as an error patent was appropriate in the absence of an assignment of error or argument by relator. *Cf. State v. Skipper*, 387 So.2d 592 (La.1980)." In *Clark*, 711 So.2d 738, this court acknowledged the supreme court's footnote in *Morris*, but felt that remanding the case for an evidentiary hearing to determine whether the defendant executed a knowing and intelligent waiver was a "prudent safeguard of this fundamental right." *Id.* at 742.

13

*State v. Smith*, 447 So.2d 4 (La.App. 3 Cir.1984). The denial of this fundamental right constitutes an error patent. *State v. Salata*, 479 So.2d 660 (La.App. 3 Cir.1985).

*Id.* at 1001.

In *Morris*, a written motion to waive jury trial signed by defense counsel, but not the defendant, was filed. In concluding this was not sufficient for a valid waiver, this court reasoned:

> Although the Supreme Court has permitted a waiver to be made by defense counsel, in such instances the defendant was present in court with his attorney when the waiver was made, and his failure to object at that time was construed to be a waiver by him. *State v. Phillips*, 365 So.2d 1304 (La.1978); *State v. Kahey*, 436 So.2d 475 (La.1983). Here the record does not show that the defendant was in court when the waiver was filed. He had no opportunity to object to the action of his attorney, therefore the motion filed by the attorney cannot be considered as a knowing and intelligent waiver by the defendant.
>
> In *State v. McCarroll*, 337 So.2d 475 (La.1976) quoted with approval by *State v. Williams*, 404 So.2d 954 (La.1981) the court stated:
>
>> Although the right to a jury trial may be waived in a non-capital case, Art. I Section 17 requires that the waiver be "knowingly and intelligently" made. Therefore we must indulge every reasonable presumption against waiver of this fundamental right.
>
>> If nothing in the record shows the defendant knowingly and intelligently waived his right to trial by jury, the presumption against waiver is not rebutted. In the instant case there is no indication that the defendant was informed by the court or his counsel of his right to trial by jury and that he knowingly and intelligently waived that right.

*Id.* at 1001.

As a result of the error, this court vacated the defendant's conviction and sentence and remanded the case to the trial court for further proceedings.[7] *See also*

---

[7]We note that in *State v. Dorsey*, an unpublished opinion bearing docket number 98-610 (La.App. 3 Cir. 12/9/98), *appeal after remand*, 00-114 (La.App. 3 Cir. 6/7/00), 768 So.2d 109, after the defendant was informed of his right to a trial by jury or a bench trial and given fifteen days to make his choice, defense counsel filed a Motion to Request Bench Trial. The motion was not signed by the defendant and there was no indication that the order granting the motion was signed in open court. This court held, "An attorney-filed motion alone does not satisfy the "knowing and

14

*State v. Arnold*, 30,282 (La.App. 2 Cir. 1/21/98), 706 So.2d 578, where the second circuit reached the same conclusion under similar circumstances, but remanded the case for an evidentiary hearing instead of reversing the defendant's conviction. Specifically, the second circuit stated:

> The defendant's convictions for murder and attempted murder are conditionally vacated and remanded to the trial court for a hearing to determine whether the defendant knowingly and intelligently waived his right to a jury trial. The defendant's conviction for possession of a firearm by a convicted felon is reversed and remanded because of the inadequate procedure surrounding his "guilty plea" at the trial.

*Id.* at 588.

This court has also chosen to remand a case for an evidentiary hearing under somewhat similar circumstances. In *Clark*, 711 So.2d 738, this court found patent error resulted when the defendant was tried by a judge after having initially requested a jury trial, absent any subsequent written or oral waiver of the previous request. However, instead of reversing the defendant's conviction and sentence, this court opted to follow the procedure adopted by the first and fifth circuits, and approved by the supreme court in *State v. Nanlal*, 97-786 (La. 9/26/97), 701 So.2d 963, and remanded the case with instructions to the trial court as follows:

> (1) conduct an evidentiary hearing within thirty days of this date to determine whether defendant knowingly and intelligently waived his right to trial by jury and (2) re-lodge the appellate record, supplemented with a transcript of the hearing, within fifteen days of the hearing. The State and defendant will be given the opportunity to file supplemental briefs, should either party wish to raise any issues arising from the hearing.

*Clark*, 711 So.2d at 742.

---

intelligent" standard. *Arnold*, 706 So.2d 578. However, where there is some indicia in the record that the defendant may have waived his constitutional right to a jury, the case should be remanded for an evidentiary hearing on this issue. Having found some indication that the defendant intended to waive trial by jury, we find an evidentiary hearing is in order." This court remanded the case with instructions that the trial court conduct an evidentiary hearing to determine if the defendant knowingly and intelligently waived his right to a jury trial.

15

It is impossible to determine from the record in the present case whether Defendant's waiver was knowingly and intelligently made. Therefore, following *Clark*, we remand the case to the trial court with instructions that the trial court conduct an evidentiary hearing within thirty days to address and rule on the issue of whether Defendant knowingly and intelligently waived his right to trial by jury. The appellate record, supplemented with a transcript of the hearing, shall be re-lodged within fifteen days of the hearing. The State and Defendant are given the opportunity to file supplemental briefs, should either party wish to raise any issues arising from the hearing. Thereafter, this court will address Defendant's appeal of his felony conviction and all issues pertinent thereto.

## CONCLUSION

Defendant's misdemeanor convictions and sentences for vehicular negligent injuring and driving left of center are affirmed. This case is remanded to the trial court with instructions that the trial court conduct an evidentiary hearing within thirty days and render a ruling on the issue of whether Defendant knowingly and intelligently waived his right to trial by jury on the felony charge of first degree vehicular negligent injuring. The appellate record, supplemented with a transcript of the hearing, shall be re-lodged within fifteen days of the hearing. The State and Defendant shall be given the opportunity to file supplemental briefs, should either party wish to raise any issues arising from the hearing. Thereafter, this court will address Defendant's appeal of his felony conviction and all issues pertinent thereto.

**AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.**