STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-572

STATE OF LOUISIANA

VERSUS

LLOYD FUSLIER

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, DOCKET NO. CR-05-0789
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Marc T. Amy, Michael G. Sullivan, and James T. Genovese, Judges.

AFFIRMED AND REMANDED.

James E. Burks
Post Office Box 16067
Lake Charles, Louisiana 70601
(337) 474-6106
COUNSEL FOR DEFENDANT/APPELLANT:
    Lloyd Fuslier


Douglas L. Hebert, Jr.
District Attorney - Thirty-third Judicial District
ADA Sherron Ashworth
Post Office Box 839
Oberlin, Louisiana 70655
(337) 639-2641
COUNSEL FOR APPELLEE:
    State of Louisiana

**GENOVESE, Judge.**

The Defendant, Lloyd Fuslier,[1] was previously before this court appealing two of his three misdemeanor convictions and his felony conviction of first degree vehicular negligent injuring. This court, finding that the evidence was sufficient to sustain the two misdemeanor convictions, affirmed those convictions and sentences. However, in its error patent review, this court found it impossible to determine from the record whether the Defendant's waiver of jury trial on the felony charge was knowingly and voluntarily made. The record contained a written motion requesting a bench trial, but the motion was not signed by the Defendant. The motion was granted, but there was no indication that this was done in open court. The record contained no minute entries concerning the waiver of the Defendant's right to a jury trial. Moreover, the lower court informed this court that a review of all recordings and notes revealed no "testimonial evidence" regarding the waiver of this right. Thus, this court remanded the case to the trial court for an evidentiary hearing on the issue of whether the Defendant knowingly and intelligently waived his right to a jury trial. This court further ruled that the "Defendant's appeal of his felony conviction and all issues pertinent thereto" were to be addressed after the hearing was held, and the record was relodged in this court.[2] *State v. Fuslier*, 06-1438, p. 16 (La.App. 3 Cir.

---

[1]This court notes that throughout the record, Defendant's name is alternately spelled "Fuselier" and "Fuslier." For consistency with a prior opinion concerning this Defendant, his name will be spelled "Fuslier."

[2]This court ordered that "[t]he appellate record, supplemented with a transcript of the hearing, shall be re-lodged within fifteen days of the hearing. The State and Defendant shall be given the opportunity to file supplemental briefs, should either party wish to raise any issues arising from the hearing." *State v. Fuslier*, 06-1438, p. 16 (La.App. 3 Cir. 4/4/07), 954 So.2d 866, 876. This court received the record containing the transcript of the evidentiary hearing. Per instruction of the Clerk of Court, the record was filed under a new docket number with the original record, 06-1438, being filed as an exhibit. No new briefs have been received from either party.

1

4/4/07), 954 So.2d 866, 876.

On April 24, 2007, the trial court held the required evidentiary hearing. Defense counsel and the Defendant testified at the hearing, and the judge found that the Defendant had knowingly and intelligently waived his right to a jury trial. For the following reasons, we now affirm the Defendant's conviction for first degree vehicular negligent injuring, and we remand the case to the trial court for establishment of a payment plan for the fine and costs ordered as conditions of probation.

## FACTS

On a rainy evening, December 3, 2004, at approximately ten o'clock, Defendant, alone at the time, was driving his truck in a westerly direction on Highway 190 toward Kinder, Louisiana. The victims, A.C. and L.F.,[3] both fifteen years of age at the time, were traveling in a Chevrolet Impala in an easterly direction toward Elton, Louisiana, with A.C. driving. It is alleged that Defendant's truck crossed the centerline of the roadway and struck the victims' car. A.C. received severe injuries. L.F. received minor injuries. It was later determined that, at the time of the accident, Defendant's blood/alcohol concentration was 0.12 percent.

## ERRORS PATENT

As previously set forth in the original appeal, it was unclear from the record whether the Defendant knowingly and intelligently waived his right to a jury trial on the felony charge of first degree vehicular negligent injuring. For that reason, we remanded the case for an evidentiary hearing on that issue. A review of the transcript of the hearing now makes it clear that the Defendant did knowingly and intelligently

---

[3]As required by La.R.S. 46:1844(W), the victims' names are replaced with initials to protect their identity.

waive this right.

Upon Defendant's conviction of first degree vehicular negligent injuring, the trial court imposed a $1,000.00 fine and all court costs, including $100.00 to the DARE Program and $50.00 to the Drug Education Program, as conditions of the Defendant's probation. However, the trial court did not establish a plan for payment of these fees.[4] "This court has found error patent when the trial court fails to establish a payment plan for fees ordered as conditions of probation." *State v. Theriot*, 04-897, p. 7 (La.App. 3 Cir. 2/9/05), 893 So.2d 1016, 1021 (citations omitted). Therefore, we remand this case to the trial court with the instruction that the trial court impose a payment plan for these fees. The plan may either be determined by the trial court or formulated by Probation and Parole and approved by the trial court. *See State v. Stevens*, 06-818 (La.App. 3 Cir. 1/31/07), 949 So.2d 597.

**ASSIGNMENT OF ERROR**

The Defendant claims that the evidence was insufficient to sustain his convictions of first degree vehicular negligent injuring, vehicular negligent injuring, and driving left of center. Specifically, the Defendant argues there was not sufficient evidence that it was his vehicle that crossed over the centerline of the roadway. As noted above, this court previously upheld the Defendant's convictions and sentences for vehicular negligent injuring and driving left of center, but it pretermitted adjudication as to the Defendant's felony conviction of first degree vehicular negligent injuring pending the evidentiary hearing. Complying with the direction provided by this court in *State v. Clark*, 97-1064 (La.App. 3 Cir. 4/1/98), 711 So.2d

---

[4]The record also indicates that the judge ordered restitution of $2,283.89 to be paid within three months of his release from jail.

3

738, *writ granted and case remanded in light of supplemental filing*, 98-1180 (La. 9/25/98), 726 So.2d 2, *on remand*, 97-1064 (La.App. 3 Cir. 11/25/98), 735 So.2d 649, and the supreme court in *State v. Morris*, 615 So.2d 327 (La.1993), we conducted a review of the sufficiency of the evidence on Defendant's felony conviction of first degree vehicular negligent injuring. Specifically, Defendant argues there was not sufficient evidence that it was his vehicle that crossed over the centerline of the roadway.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan,* 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant was charged with first degree vehicular negligent injuring. This offense is described, in pertinent part, as follows:

> A. First degree vehicular negligent injuring is the inflicting of serious bodily injury upon the person of a human being when caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance whenever any of the following conditions exists:
>
> (1) The offender is under the influence of alcoholic beverages.
>
> (2) The offender's blood alcohol concentration is 0.08 percent or

more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

. . . .

C. For purpose of this Section, "serious bodily injury" means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member or organ or a mental faculty, or a substantial risk of death.

La.R.S. 14:39.2.

Vehicular negligent injuring is defined as:

A. Vehicular negligent injuring is the inflicting of any injury upon the person of a human being when caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of any motor vehicle, aircraft, watercraft, or other means of conveyance whenever any of the following conditions exists:

(1) The offender is under the influence of alcoholic beverages.

(2) The offender's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

La.R.S. 14:39.1.

The offense of operating a vehicle while intoxicated occurs when the operator of a vehicle "is under the influence of alcoholic beverages; or (b) [when] [t]he operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood." La.R.S. 14:98(A).

Finally, a driver is mandated to drive on the right side of the roadway unless "passing another vehicle proceeding the same direction under the rules governing such movement," or "[w]hen the right half of a roadway is closed to traffic," or "[u]pon a roadway designated and signposted for one-way traffic." La.R.S. 32:71(A). The State alleged that Defendant illegally drove his vehicle into the left lane.

Both victims testified at trial. A.C., who was eighteen years of age at the time

5

of trial, testified that she was driving her mother's Chevrolet Impala. She stated that she and her best friend, L.F., had gone to a church function in Kinder. At approximately 9:30 p.m., they left and went to Market Basket for a few minutes. She then drove along Highway 190 toward Elton to take L.F. home. A.C. has no recollection of the accident. Although she recalled it being a rainy night and seeing oncoming traffic, she did not recall seeing Defendant's truck. A.C. testified that one moment she was talking with L.F., and the next moment she woke up in the hospital. She testified that the orbital bones in her face were broken in several places, and her jaw was crushed. She had to have a tracheotomy in order to breathe. She has had at least ten operations to reconstruct her face. A.C. identified pictures taken of her shortly after the accident. She stated that, in addition to being permanently scarred, she had to have a shunt placed from her left eye to her nose to allow drainage because her eye no longer drains properly, and she appears to be crying all the time.

L.F.'s testimony corroborated A.C.'s testimony. L.F., who was seventeen years of age at the time of trial, also did not see Defendant's truck. She stated that she was looking out the passenger side window when the accident occurred. She said that she suffered a bruised hip and knee and that she has had no continuing problems from her injuries.

At the time of the accident, Roy Dean Strother, since retired, was a "Master Trooper" with the Allen Parish Sheriff's Office. He was an accident investigator and was the lead investigator in this case. Since retirement, he has worked as a consultant for the sheriff's office in accident reconstruction. He was accepted by the trial court as an expert in crash scene investigations. Strother testified that it had been raining on and off all day and into the evening on December 3, 2004. He was called to the

6

scene about 10:09 p.m. He identified pictures he had taken that night of the condition of the roadway and of the truck and the car. He testified that the truck had crossed the centerline and struck the victims' car. He explained that the two vehicles impacted approximately two feet south of the centerline, which would have made the point of impact in the eastbound lane. He stated that he determined where the point of impact occurred by the distribution of the debris left from the car and truck as a result of the impact, the type of damage done to the two vehicles, the final resting place of the vehicles, and from what he identified as a gouge in the roadway, which was approximately two feet south of the centerline.

Strother stated that, after he took pictures that night, he went to the hospital to see if he could speak with the Defendant and the victims. He said that, upon encountering Defendant, he detected a strong odor of alcohol and had the nurse take a sample of Defendant's blood for a blood/alcohol concentration test. The results of the laboratory examination indicated that at the time of the extraction of the sample, Defendant's blood contained "0.12 gram percent of ethyl alcohol."

Strother testified that he did not ask either the Defendant or the victims what had happened, that the Defendant would not speak to him, and that the victims could not recall the accident. He stated he did not mark the point of impact or the final resting places of the vehicles with paint the night of the accident because the paint would have been washed away by the rain. He admitted a gouge in the roadway could not be seen in any of the pictures he took the evening of the accident. Moreover, he did not return to the accident site the next day to take pictures. He stated that he had marked the location by noting in his report that the point of impact was at the mile post marker seventy-four.

Jason Fontenot, a patrolman with the Kinder Police Department, was one of the first officers to arrive at the accident scene. His testimony essentially corroborated Strother's. He described the position of the vehicles in relation to the roadway and the debris field left from the collision that was located in the middle of the eastbound lane.

Roger Thomas, an accident reconstructionist for the Calcasieu Parish Sheriff's Office, testified as to how, in his opinion, the accident occurred. He was accepted as an expert in accident reconstruction. Thomas testified that on April 25, 2006, he visited the crash site with Roy Strother, who described for him the scene on the night of the accident. He reviewed Strother's reports, diagrams of the site, and photographs. He stated that Strother pointed out to him the gouge mark in the roadway at the supposed point of impact in the eastbound lane.

After long and somewhat confusing testimony, Thomas concluded that Defendant's truck crossed the centerline at approximately nine degrees off the central axis of the westbound lane and struck the victim's car.

> Okay. So, number one [Defendant's truck] is at a greater speed, heavier vehicle, going much further after post impact distance than vehicle two [victims' car] did, westbound, veers slightly, about approximately ten degrees, nine or ten degrees, across the yellow line, into the - - partially into the eastbound lane of 190 at which time the left front area - - and I haven't looked at photo on number one, - - but from looking at this one I can almost tell you where this one would be - - but, left from area, okay of vehicle one impacted the right there at the front, the left front, right behind the bumper area, left front side car panel of number two at initial impact. And of course I can tell that by, again, by the angle, and again by the - - where the vehicles ended up, they would have come out of the eastbound lane of 190.

Thomas arrived at this conclusion after considering the assumed point of impact, the weight of the two vehicles, the final resting place of the two vehicles after impact, and the distance of each vehicle from the point of impact. The truck ended

8

up in the ditch off the south side of the eastbound lane, and the car stopped part of the way off the road in the westbound lane. He considered the damage done to the vehicles. The truck had damage to its left front bumper and fender, while the damage to the car extended from its left front bumper and fender along the driver's side door panel. He also considered the location of the debris on the roadway, which was scattered in a southwesterly manner from the point of impact.

On cross-examination, Thomas admitted that he did not see a photograph of the damage done to the truck, but relied only on Strother's description. He further agreed that there was no way to know for certain whether the gouge he saw in the eastbound lane at the alleged position of the point of impact was the gouge left by this particular event.

Finally, Zachary J. Lee, a private investigator from Lake Charles, Louisiana, testified on behalf of the Defendant as an accident reconstructionist. He stated that he went to the accident site in March 2005. He stated that he visited the crash site using, as a guide, Strother's report indicating the point of impact at mile post seventy-four. He testified that he saw nothing to indicate that the accident had occurred in the location Roy Thomas's report indicated. Lee primarily addressed inconsistency in Thomas's report. He pointed out, as inconsistent, certain distances of the vehicles from the alleged point of impact to where each vehicle was alleged to have come to rest. He stated that there was no way to conclusively establish a point of impact from the photographs or Strother's report and Thomas's report. He stated, "Mr. Thomas, he makes several statements to irrefutable facts and provable facts, but I have not seen any proof."

On cross-examination, Lee admitted that he never talked with Strother

9

regarding the accident scene on the night of the accident. He stated that he did not do an accident reconstruction. However, he testified that he did not agree with Thomas's hypothesis that, if the truck hit the car at a nine-degree angle from the central axis of the westbound lane, the vehicles would have come to rest in the positions shown in the photographs. Nevertheless, Lee stated that the damage to the car was indicative of another vehicle "coming in at a nine degree angle."

Defendant's entire argument of insufficient evidence is premised on his assertion that there was no conclusive evidence that it was Defendant who crossed the centerline. We find that the evidence was sufficient to allow the trier of fact to conclude beyond a reasonable doubt that Defendant did cross the centerline, thereby causing the collision between his truck and the victims' vehicle. Patrolman Fontenot and Roy Strother both testified as to the position of the vehicles after the accident and that the debris field which resulted from the collision was located in the eastbound lane, indicating that Defendant left his lane of travel and entered the victims' lane. Pictures of the damage to the car were submitted, which indicated that the truck turned into the car. Moreover, the evidence that Defendant was under the influence of alcohol at the time of the collision was not refuted.

While Defendant's expert witness testified that there was no evidence to suggest that it was Defendant who crossed the centerline, he did not do an accident reconstruction, and he agreed that the damage sustained by the car as depicted in the photograph was consistent with the truck coming into the eastbound lane of travel and hitting the car at a nine-degree angle.

Consequently, the record reveals that the State did meet its burden of proving all of the necessary elements of first degree vehicular negligent injuring.

**CONCLUSION**

The Defendant's conviction for first degree vehicular negligent injuring is affirmed. This case is remanded to the trial court with instructions to impose a payment plan for the fine and costs imposed as conditions of the Defendant's probation. The plan may either be determined by the trial court or formulated by his probation officer and approved by the trial court.

**AFFIRMED AND REMANDED.**