NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-98

STATE OF LOUISIANA

VERSUS

ROBERT LEE BELSHA

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 88694 AM
HONORABLE C. ANTHONY EAVES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN D. SAUNDERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy, and Elizabeth A. Pickett, Judges.

CONVICTION AND SENTENCE AFFIRMED.
REMANDED, WITH INSTUCTIONS.

**Asa A. Skinner**
**District Attorney, Thirtieth Judicial District Court**
**Terry W. Lambright**
**First Assistant District Attorney**
**P. O. Box 1188**
**Leesville, LA 71496-1188**
**(337) 239-2008**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Elvin C. Fontenot, Jr.**
**Attorney At Law**
**110 East Texas Street**
**Leesville, LA 71446**
**(337) 239-2684**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Robert Lee Belsha**

**SAUNDERS, Judge.**

On December 3, 2015, the State filed an indictment charging Defendant, Robert Lee Belsha, with three counts of aggravated crime against nature, violations of La.R.S. 14:89.1. The parties selected a jury on May 15, 2017. Said jury began hearing evidence the next day. On May 18, the jury found Defendant guilty as charged on count one and not guilty on counts two and three.

On July 11-12, the district court conducted a sentencing hearing and sentenced Defendant to fifteen years at hard labor, with thirteen of those years suspended with five years of supervised probation. Defendant now seeks review by this court, assigning two errors.

## FACTS:

The victim, V.B., is Defendant's biological daughter. In 2015, she was seventeen and living in Vernon Parish with him, her stepmother, and step-nephew; she had returned from living with her mother and stepfather and three younger sisters in Bahrain. On January 26, 2015, when V.B. returned from school, nobody was home; her stepmother and step-nephew were out of town. When Defendant arrived at about 8:30, she was doing laundry; he appeared to her to have been drinking. He helped put up the clothes, then they sat on the couch together and started drinking.

V.B. wanted to smoke marijuana, but they had to go to an area bar to obtain it. They went home, smoked the marijuana, and drank some more. They had a conversation, and she told Defendant that she had sex with her stepbrother (her stepfather's son). Defendant began massaging her shoulders; he then proceeded to hold her down. He removed her pants and underwear and had vaginal intercourse with her.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find an error patent.

As special conditions of his probation, Defendant was ordered to pay a fine of $5,000.00 and court costs. A payment plan, however, was not established. In *State v. Arisme*, 13-269, pp. 3-4 (La.App. 3 Cir. 10/9/13), 123 So.3d 1259, 1262, this issue was addressed by this court:

> First, as a condition of probation, the trial court ordered a $250.00 fee to the Louisiana Crime Lab, for which a payment plan was not established. In *State v. Wagner*, 07-127, pp. 7-8 (La.App. 3 Cir. 11/5/08), 996 So.2d 1203, 1208, this court held in pertinent part:
>
> > When the fines and costs are imposed as a condition of probation, but the trial court is silent as to the mode of payment or the trial court attempts to establish a payment plan, this court has required a specific payment plan be established. *See State v. Theriot*, 04-897 (La.App. 3 Cir. 2/9/05), 893 So.2d 1016 (fine, court costs, and cost of prosecution); *State v. Fuslier*, 07-572 (La.App. 3 Cir. 10/31/07), 970 So.2d 83 (fine and costs); *State v. Console*, 07-1422 (La.App. 3 Cir. 4/30/08), 981 So.2d 875 (fine and court costs).
> >
> > We view this procedure as no different from payment plans for *restitution*. *See State v. Dean*, 99-475 (La.App. 3 Cir. 11/3/99), 748 So.2d 57, *writ denied*, 99-3413 (La.5/26/00), 762 So.2d 1101 (restitution only), *State v. Reynolds*, 99-1847 (La.App. 3 Cir. 6/7/00), 772 So.2d 128 (restitution, fine, and costs), *State v. Stevens*, 06-818 (La.App. 3 Cir. 1/31/07), 949 So.2d 597 (restitution, fine, court costs, and reimbursement to Indigent Defender Board), and *State v. Fontenot*, 01-540 (La.App. 3 Cir. 11/7/01), 799 So.2d 1255 (restitution, court costs and payments to victim's fund, Indigent Defender Board, and District Attorney).
> >
> > We, therefore, remand this case to the trial court for establishment of a payment plan for the fine, noting that the plan may either be determined by the trial court or by Probation and Parole, with approval by the trial court. *See Stevens*, 949 So.2d 597.

2

Similarly, the trial court's ordering the payment to the crime lab fund during the period of probation is an insufficient payment plan. We also remand the case to the trial court for establishment of a payment plan for these costs, noting that the plan may either be determined by the trial court or by Probation and Parole, with approval by the trial court. *See Stevens*, 949 So.2d 597.

This issue has been similarly resolved in other cases. *See State v. LaCombe*, 09-544 (La.App. 3 Cir. 12/9/09), 25 So.3d 1002, and *State v. Snelling*, 09-1313 (La.App. 3 Cir. 5/5/10), 36 So.3d 1060, *writ denied*, 10-1301 (La.12/17/10), 51 So.3d 16. Accordingly, we remand this case to the trial court for the establishment of a payment plan for the fee, noting that the plan may either be determined by the trial court or by the Department of Probation and Parole with approval by the trial court. *See Stevens*, 949 So.2d 597.

As such, this case is remanded to the trial court for the establishment of a payment plan for the fine and court costs imposed as conditions of probation. The payment plan may either be determined by the trial court or by the Office of Probation and Parole with approval by the trial court.

## ASSIGNMENT OF ERROR NUMBER ONE:

In his first assignment of error, Defendant argues the evidence adduced against him at trial was insufficient to support his conviction. This court has explained:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

On appeal, there appear to be two main points to Defendant's argument. First, he attacks the credibility of V.B., noting that there were discrepancies among the various statements she gave during the investigation and her trial testimony. For example, there were discrepancies regarding whether Defendant struck her during the offense, whether they had oral sex, whether the two of them smoked marijuana, what she was wearing, and what they were drinking.

As stated in *Kennerson*, this court does not second-guess the credibility determinations of the factfinder. Further, a single witness's testimony is sufficient to support a conviction. *State v. McNeal*, 34,593 (La.App. 2 Cir. 4/4/01), 785 So.2d 957 (use of weapon); *State v. Brian*, 502 So.2d 293 (La.App. 3 Cir.1987); *State in the Interest of Johnson*, 461 So.2d 551 (La.App. 3 Cir.1984) (identification of offender). Regarding credibility assessments more generally, this court has explained:

> As mentioned in *Kennerson*, credibility assessments are within the province of the fact-finder, in this case the jury. A jury may "accept or reject, in whole or in part," any witness's testimony. *State v. Silman*, 95-0154, p. 12 (La.11/27/95), 663 So.2d 27, 28. Clearly, the jury believed the victim's version of events, and Hypolite's brief offers no concrete reason why the jury's conclusion should be considered unreasonable. This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way. *See, e.g., State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol before the offense and the other was a minor who believed all white men looked alike, and defendant was white.
>
> In the present case, there was no indication that Ms. Chatman was unable to objectively perceive events, although during cross-examination she testified that she had consumed two twenty-two-ounce beers while visiting her friend's house earlier in the evening. It was not clear exactly when, or over what a period, she drank the beers. The testimony did not indicate that she was intoxicated, or otherwise unable to objectively perceive events, at the time of the offense.

4

*State v. Hypolite*, 04-1658, pp. 4-5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381. In the present case, there is no contention V.B. was unable to properly perceive the relevant events as they happened. Thus, there is no basis to re-assess her credibility on review.

Defendant also attacks the quality of the DNA evidence adduced against him. Part of his argument directly questions the reliability of DNA testing. A *Jackson* review is not the forum for such an argument. *See State v. Hearold*, 603 So.2d 731, 734 (La.1992), which stated that a *Jackson* review encompasses all the evidence adduced at trial whether admissible or inadmissible; *see also State v. Foret*, 628 So.2d 1116 (La.1993), which set forth the mechanism for testing the admissibility of scientific and technical evidence in Louisiana.

At trial, the State's experts regarding DNA were Katie Traweek of the North Louisiana Crime Lab and Alan Keel of Forensic Analytical Sciences in California. Defendant called Dr. Dean Stetler, an associate professor of genetics at the University of Kansas. In his brief, Defendant correctly notes that autosomal DNA testing excluded him. However, he acknowledges that another testing method, Y STR, did not exclude him. Further, we note the following colloquy from the State's cross-examination of Defendant's expert, Dr. Stetler, which follows:

> Q. And with that you have in this case, I think, been very careful to say that only the possibility of contamination exists. Is that correct?
>
> A. Yes.
>
> Q. And are you telling this jury that you found evidence that contamination occurred?
>
> A. No.
>
> Q. You can't say that, can you?
>
> A. No.

Q. In fact, would you exclude Mr. Belsha as a donor of the DNA that was found in the test?

A. No.

Q. Okay and, so, when you have a statement from a person such as yourself that he can not be excluded, would you say that 99.99 percent of the population is excluded?

A. Yes.

Q. Oh. So, you would agree with that?

A. Yes.

Q. And, so, with that you're comfortable in making statements like there is no evidence pointing to the guilt of Mr. Belsha?

A. That's correct.

Q. So, you can say both of those things to the jury and you feel like those are compatible?

A. Yes.

Q. How is that? How exactly do you justify the existence of both of those counter intuitive statements? Please explain it to these people.

A. Well, the fact is the DNA matches Mr. Belsha, but how that DNA got there is in question.

Q. Do you have any idea how that DNA got there?

A. No.

Q. Are you a fact witness in the case?

A. No.

Q. Did you do any analysis in this case?

A. I didn't need to do an analysis to come to my conclusion.

Q. Well, don't you think that if you had taken the sample and seeing if the results were repeatable in your own laboratory that would have been a fine way to pursue whether the results were reliable in this case?

A. I had no doubt to the reliability of the results.

Q. Okay. So, you don't doubt the reliability here, right?

A. That's right.

Q. You don't doubt that 99.99 percent of the entire population of the world is excluded by these results and you don't feel like you needed to do any follow-up testing, correct?

A. That's correct.

The issue is not the reliability of the DNA evidence, but whether, in the context of the *Jackson* review, the State adduced sufficient evidence to support the conviction. The defense expert's acknowledgement that the DNA evidence excluded a high percentage of the world's population supported the victim's testimony sufficiently that the jury's decision to convict him was rational. Further, it is apparent that the jury exercised some discretion in considering the evidence, since it found Defendant not guilty on the other two counts.

A noteworthy facet of this case is the fact that no sperm cells were found. On appeal, Defendant complains that at the "pre-sentence hearing," on July 11, 2017, he was not allowed to introduce a report regarding his sperm count. During Defendant's testimony at the hearing, he attempted to discuss and introduce the document. The following colloquy occurred:

BY MR. WILLIAMS:

Q. Mr. Belsha, did you speak to your doctor after having this test conducted?

A. Yes, sir.

Q. And what did he tell you the results were on this test?

A. That I had, like, millions of swimmers.

Q. Okay. Did he indicate that you had a high count of sperm, a low count of sperm?

A. Yes, sir, the average - - the average male has about 120. I have over 130 something.

Q. Okay. So, that would show that you actually have a higher count than normal?

7

A.    Yes, sir.

Q.    And he gave you this documentation to - - that's what he - - he based his opinion on when he told you about it?

A.    Yes, sir.

Q.    And I'm going to show you this document.

A.    Yes, sir.

BY MR. HALL:

Objection to the document for the same reasons, Your Honor.

BY MR. WILLIAMS:

Your Honor, he's established it through hearsay, hearsay is admissible at a sentencing hearing. This came from the doctor. If the Court wants to consider it, fine, if they don't, fine. We would like for it to be in the record because it is admissible.

Q.    Is this the document that you received from Dr. Fraser?

BY MR. HALL:

Well, hold on, Mr. Williams, I don't believe the Court has ruled yet.

BY THE COURT:

He's not offered it into evidence yet.

BY MR. HALL:

I object to him giving opinion testimony about what that document says.

BY THE COURT:

Y'all come here.

(BENCH CONFERENCE)

BY THE COURT:

If this thing is some type of magic smoking gun, one, why didn't you disclose this in a motion for the new trial? That's the - - that's the means to try and get something like this in.

8

BY MR. WILLIAMS:

I didn't have this in time for the motion for new trial, Your Honor. The thing - -

BY THE COURT:

I'm going off what y'all tell me.

BY MR. WILLIAMS:

The State argued in closing - - in their closing arguments that if he would have been able to produce sperm he could have went and got this and provided it and all that. My client went and got it after the fact and we're offering it.

BY MR. HALL:

But why is there a delay? Why don't I have it? Why are you surprising me with it here? This is not how you and I - -

BY MR. WILLIAMS:

Why did I not get the letter from the victim until today?

BY MR. HALL:

She gave it to me today, she wrote it last night.

BY MR. WILLIAMS:

She gave it to you today?

BY MR. HALL:

Today. She wrote it last night after 7 when I was in Shreveport. I said, bring it to me in court.

BY MR. WILLIAMS:

This is the first I heard of it.

BY MR. HALL:

It didn't exist before yesterday. At any rate, he's testified to it and that's in.

BY MR. WILLIAMS:

Your Honor, if nothing else, I would proffer it for the Appellate Court to review if the Court doesn't want to look at it.

9

BY THE COURT:

I'm not going to allow it. I mean, you can proffer it, anybody is always entitled to proffer whatever. But I'm not going to allow it in evidence. Clay, the way this should have been done is in a motion for new trial and say, Judge, here's this evidence, my guy has not had a vasectomy.

BY MR. WILLIAMS:

I didn't have it in the time frame for the motion for new trial. That was the problem.

BY THE COURT:

And then you could have gotten an expert here, he could have submitted it to an expert - -

BY MR. HALL:

Yes.

BY THE COURT:

- - and then we could have all this stuff - - both people had the chance to do it.

BY MR. WILLIAMS:

Your Honor, I would have been filing an out of time motion for new trial by the time I got this.

BY MR. HALL:

It didn't have to be a motion for new trial, it could have been in keeping with your obligations under discovery. There's a valid order for that. You can't argue around that and that problem doesn't go away and it's even worth explaining. He's going to let you put it in the record. He's already testified to it. Can we go sit down?

BY MR. WILLIAMS:

That's what - - I'd like to proffer this into the record, Your Honor.

BY THE COURT:

Okay.
                    (END OF BENCH CONFERENCE)

BY THE COURT:

10

I'm going to sustain the State's objection and Mr. Williams is going to proffer the document for the Court of Appeals to consider.

PROFFERED DEFENSE DOCUMENT FILED INTO THE RECORD.

We find that the trial court was correct, as Defendant's guilt or innocence was not at issue at the presentence hearing. Setting aside the jury's verdict based upon new or previously-unknown evidence would have required a motion for new trial. *See* La.Code Crim.P. art. 857.[1] The grounds for a new trial are contained in La.Code Crim.P. art. 851, which states in pertinent part:

A. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.

B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:

(1) The verdict is contrary to the law and the evidence.

(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.

(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.

(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment.

(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.

However, Defendant did not make such a motion. If Defendant seeks to develop the record regarding any potential new evidence, he may proceed via the

---

[1] A motion for post-verdict judgment of acquittal focuses on the evidence adduced at trial. La.Code Crim.P. art. 821.

post-conviction relief process once his conviction is final. La.Code Crim.P. arts. 922, 926, 930.2.

For the reasons discussed, this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO:

In his second assignment of error, Defendant requests a review of the record for errors patent. As discussed above, we always conduct such a review pursuant to La.Code Crim.P. art. 920. This is the court's standard practice. Defendant appears to imply that he did not receive effective assistance of counsel at trial. However, the argument is not explicitly made. If Defendant so desires, he may develop such an argument and the record, if necessary, in the post-conviction relief process.

## DECREE:

The conviction and sentence are affirmed. However, the case is remanded to the trial court for the establishment of a payment plan for the fine and court costs imposed as conditions of probation. Said payment plan may either be determined by the trial court or by the Office of Probation and Parole with approval by the trial court.

**CONVICTION AND SENTENCE AFFIRMED. REMANDED, WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules– Courts of Appeal, Rule 2–16.3.